Original
No. 80-414

### THE STATE OF NEW HAMPSHIRE

v.

### CLARENCE ELBERT

January 30, 1981

44

*Gregory H. Smith*, acting attorney general (*Paul Barbadoro*, attorney, orally), for the State.

*James D. Forsyth*, Hillsborough County Public Defender, for the defendant.

DOUGLAS, J.   The plaintiff in this case is a defendant in a criminal case pending in Rockingham County. He filed pretrial motions to quash the indictments against him and to strike the petit jury panel on the ground that the manner in which the grand jury was chosen impermissibly discriminated against both blacks and young people between 18 and 34 years of age. During two days of hearings, the Superior Court (*Wyman*, J.) heard testimony from the clerk of the court, several attorneys, a statistics professor, and ten selectmen or their office staff. On October 16, 1980, the court denied the motions and declined to order an interlocutory transfer to this court. A week later the defendant filed a petition for a writ of certiorari which we accepted under Rule 11.

We begin by recalling that the jury is a cornerstone of our democratic system of government. "The idea . . . that ordinary citizens without experience in judicial decision-making should . . . decide issues of great importance . . . is an unusual one in the world today." J. VAN DYKE, JURY SELECTION PROCEDURES 1 (1977). "The jury developed as part of a long struggle against centralized power in Britain" and was adopted in this country as part of our British legal heritage. *Id.* Our Founding Fathers considered the right to trial by jury to be of such importance that

the Bill of Rights has three separate provisions for it: 1) the fifth amendment requirement of grand jury indictment in criminal cases, 2) the sixth amendment right to jury trial in criminal cases, and 3) the seventh amendment right to jury trial in certain civil cases.

The Supreme Court of the United States has held that the sixth amendment right to a jury trial is binding on the states under the fourteenth amendment. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). Although it was not until 1975 that the United States Supreme Court expressly held that a jury drawn from a fair cross-section of the community was fundamental to a defendant's sixth amendment guarantee of an impartial jury, *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975), the Court has implicitly recognized that right since 1880. In *Strauder v. West Virginia*, 100 U.S. 303, 310 (1880), the United States Supreme Court held that discrimination against blacks in the selection of jurors violated a black defendant's fourteenth amendment right to equal protection of the laws. Since then, the Court has gradually redefined the scope of that right to comport with modern views. For example, in 1880 the Supreme Court expressed its opinion that systematic exclusion of women from juries was permissible, *id.*, but in 1975 the court held otherwise, *Taylor v. Louisiana, supra* at 537.

■ To establish a prima facie violation of the fair cross-section requirement, a defendant must demonstrate:

> "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).

■ A "distinctive group" or "cognizable class" is a commonly recognized group whose members hold some similar attitudes. *See United States v. Butera*, 420 F.2d 564, 569–70 (1st Cir. 1970); *United States v. Guzman*, 337 F. Supp. 140, 143 (S.D.N.Y.), *aff'd*, 468 F.2d 1245 (2d Cir. 1972), *cert. denied*, 410 U.S. 937 (1973). The Supreme Court has so far held that racial and ethnic groups, *Hernandez v. Texas*, 347 U.S. 475, 478–80 (1954), and women, *Taylor v. Louisiana*, 419 U.S. at 531–33, are "cognizable classes." The Supreme Court has not decided whether young people

constitute a "cognizable class." *Hamling v. United States*, 418 U.S. 87, 137–38 (1974), and we do not now decide that young people constitute such a class. *See Commonwealth v. Bastarache*, 414 N.E.2d 984 (Mass. 1980).

■ Even assuming *arguendo* that young people are a "cognizable class," a defendant must establish that young people are not fairly represented in the pools from which grand or trial juries are drawn and that this underrepresentation is a result of systematic exclusion. The statistical evidence judicially noticed in this case is that people between the ages of 18 and 34 constitute about 38.4 percent of the population of Rockingham County. It also showed that 11.4 percent of the jurors during the January 1979, April 1980, and September 1980 terms were within that age group. On the basis of these statistics, we do not find that young people are underrepresented to an unconstitutional degree.

■ The data presented to the court showed that blacks comprised only 0.94 percent of the county's population during the period involved in the study. The evidence showed that 0.15 percent of the jurors during the same period were black. Because of the understandable lack of records of the number of blacks on juries, the evidence is based on the questionable reliability of the memory of individuals involved in the system. Considering the small numbers involved, we do not find a significant underrepresentation of blacks on juries.

Exclusion of persons aged 18 to 34 and blacks from juries is, however, an occurrence which may be possible under our statutes. The selection of jurors in New Hampshire is within the discretion of selectmen, who may choose "such men and women . . . as *they judge eligible* to serve. . . ." (Emphasis added.) RSA 500-A:2 (Supp. 1979) The unfettered discretion allowed the selectmen by RSA 500-A:2 (Supp. 1979) does not require that jurors be of age, literate, voters, or even citizens of the State.

Six attorneys and ten selectmen testified regarding jury selection practices during three terms of court in the last two years. The method of selecting juries varied widely. The selectman of one town testified that because he only picks residents he knows (one was his wife), they tend to be older (he was sixty-four). He also testified that he picks people who want to serve and who have the time to do so because they are retired. In that town, a *de facto* "key man" system prevailed because "we would tend not to choose people whom we did not know or whose family we didn't know." One town selectman testified that he specifically excludes people

who volunteer; a selectman in Portsmouth testified that he automatically appoints such people, a practice that violates RSA 500-A:13 (Supp. 1979); and a third selectman testified that she telephones people to determine if they would be willing to serve. The latter selectman conceded that she "obtained no young people . . . in the age [group] of twenty-three to thirty-two." Her list comprised "mid-50's to retired people." The selectman from one town testified that he once selected jurors from a list of real estate property taxpayers, a list that obviously did not include tenants.

The testimony of the ten selectmen indicates that only one of them was selecting at random. The only exception was the selectman from Greenland, who testified that he picks jurors by placing the checklist on the floor and tossing a coin. Nothing in the record reflects anything but random selection by the clerk of court from the names locally submitted, but the methods of selecting the names submitted by the selectmen to the clerk are clearly weak points in the "system."

■ While "States remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists or panels are representative of the community," *Taylor v. Louisiana*, 419 U.S. at 538, they may not allow the pursuit of competent jurors to result in underrepresentation of a distinct segment of the community. *Glasser v. U.S.*, 315 U.S. 60, 86 (1942). Although the evidence indicates that selectmen conscientiously perform their duties and do not intentionally preclude young people or blacks from serving, the fact remains that the current "system" can result in less than a good cross-section of the community. We note that since 1968 the United States District Court for the District of New Hampshire has used a system whereby the clerk of court selects the jury array on a purely numerically random basis from State voter lists.

■ The trial court found that such underrepresentation of young people or blacks as did exist was not due to systematic exclusion. Even assuming *arguendo* that young people are a cognizable class for this purpose, we hold that neither they nor blacks are presently underrepresented to an unconstitutional extent by systematic exclusion. However, because the system has the potential for such exclusion of them as well as others, we now order that, pursuant to our administrative authority under N.H. CONST. pt. II, art. 73-A (Supp. 1979), pending further orders or rules of this court or until a new statute is enacted which prescribes a suitable alternative method, all future jury lists in the

State are to be chosen at random from voter checklists under the supervisory direction of the clerks of court. Pending implementation of the foregoing, jury trials are to proceed as usual.

*Writ denied.*

All concurred.