Sullivan
No. 80-036

THE STATE OF NEW HAMPSHIRE

v.

TERRY PRESTON

March 11, 1981

PER CURIAM. The issues in this kidnapping and felonious sexual assault case are whether the admission of evidence regarding the victim's virginity requires a new trial, whether the prosecutor's closing argument constituted prosecutorial misconduct, whether the trial court erred in denying the defendant's motion to take the deposition of the victim, whether the jury was not chosen from a fair cross-section of the community in violation of the defendant's sixth amendment right to a fair trial, and whether it was error for the court to find that the defendant was a dangerous sexual offender when the evidence showed that he was not amenable to treatment. We uphold the defendant's conviction.

The evidence at trial established the following facts. The sixteen-year-old victim left her place of employment about midnight on July 18, 1979. As she started to get into her Jeep, a man approached her and asked for a ride. She refused, but the man persisted and entered the Jeep. After they had traveled a short distance, he grabbed the victim by the hair and directed her to drive to a gravel pit where, holding a knife, he ordered her to

undress. He then raped her. Approximately thirty minutes later, he raped her again, after which they returned to the Jeep. After wiping the fingerprints from the Jeep, the defendant fled the scene. The victim ran to the nearby residence of the Swensons, who, by coincidence, were the aunt and uncle of the defendant and with whom he was living. The victim was later examined at a hospital and was found to have had sexual intercourse shortly before the examination. The police were notified of the incident and, with the Swensons' consent, searched the area of the house where the defendant slept. They found a knife in a box near the defendant's bed which, from the evidence, the trier of fact could have found was the one used in the assault.

The victim, who had known the defendant by sight and first name before the incident, identified him as her assailant, and he was arrested. A jury convicted the defendant of kidnapping (RSA 633:1 I(d) ) and aggravated felonious sexual assault (RSA 632-A:2 III (Supp. 1979) ). The Court (*DiClerico*, J.) found the defendant to be a dangerous sexual offender under RSA ch. 173-A, sentenced him to eleven to twenty-two years, and provided that the defendant could be transferred between the State prison and the New Hampshire Hospital as his condition might warrant. The defendant appealed.

■ The defendant first challenges the admission into evidence of the victim's testimony that the July 18, 1979, incident was her "first sexual encounter." He argues that the only issue at trial was whether he was the perpetrator of the crime and that since the victim's consent was not at issue, evidence of her prior chastity was inadmissible. We disagree.

■ The State must prove lack of consent beyond a reasonable doubt to make a prima facie case of rape. *See State v. Lemire*, 115 N.H. 526, 532, 345 A.2d 906, 911 (1975); RSA 625:10. This is so regardless of whether the defendant, pursuant to Superior Court Rule 101, formally notifies the court and the prosecution of his intention to claim the defense of consent. The defendant may, of course, stipulate prior to trial on the issue of lack of consent. Superior Court Rule 62(B)(12). In this case, however, the defendant did not do so, therefore leaving lack of consent to be proved by the State as part of its prima facie case. *See State v. Lemire, supra* at 532, 345 A.2d at 911. Moreover, if consent was not an issue and if the only issue was the assailant's identity, as the defendant con-

tends, the evidence of virginity could not have been harmful to the defendant because it is not related to the issue he contested. Finally, the defendant's reliance on New Hampshire's rape shield law, RSA 632-A:6 (Supp. 1979), is misplaced because that statute excludes evidence of certain prior sexual *activity* of the victim, not evidence of the victim's virginity. For the same reasons, we reject the defendant's argument that the prosecutor's brief reference to the victim's virginity in his closing argument is ground for a new trial.

■ The defendant next argues that the prosecutor's closing argument, in which he argued to the jury three facts not in evidence and on one occasion asked the jury to use its imagination, constituted prosecutorial misconduct and therefore requires a new trial. The three alleged misstatements of the evidence were that the defendant told the victim it was fortunate for her that she was not the person on whom he was taking out his frustration "or else you'd be dead," that the defendant's aunt testified that the victim, on being informed that the defendant was in her house, said "Oh, my God. I've come to the house where he is," and that the knife used by the perpetrator was found with the defendant's "personal belongings."

No objection was made until after the completion of the argument. These three statements were then withdrawn by the prosecutor, who stood before the jury and specifically acknowledged that each one was an incorrect statement of the evidence. He also told the jurors that they should not use their imagination but that they should rely strictly on their own recollection of the evidence. The judge instructed the jury that statements of counsel were not evidence and that the jurors should use their own recollection of the evidence, not their imagination.

We first note that the reference to the knife was not without some foundation, since it was found in a box near the defendant's bed. Furthermore, the defendant did not object or except to the methods used to cure the effect of the prosecutor's argument. Consequently, he is not now in a position to complain about the adequacy of those methods. *State v. Bass*, 93 N.H. 172, 178, 37 A.2d 7, 11–12 (1944); *see State v. Carroll*, 120 N.H. 458, 461, 417 A.2d 8, 10 (1980). In any event, we are satisfied that any possible prejudice to the defendant was cured by the prosecutor's own retraction of his statements and by the court's instructions to the jury, which we assume the jurors followed. *See State v. Novosel*, 120 N.H. 176, 186,

412 A.2d 739, 746 (1980); *State v. Bass, supra* at 178, 37 A.2d at 11–12.

We do, however, caution prosecutors to avoid misstatements of evidence, improper argument, or other improper conduct. This court has often addressed complaints by criminal defendants of prosecutorial misconduct, although the alleged misconduct usually has not required us to reverse the convictions. *But see State v. Scarlett*, 118 N.H. 904, 395 A.2d 1244 (1978). It is only fair to state that, because of the continuing problem, we will take a firmer stand in the future. *See State v. Arthur*, 118 N.H. 561, 564, 391 A.2d 884, 886 (1978). Although we believe that any prejudice was cured in this case, we do not condone the conduct of the prosecutor, who is not counsel on appeal.

■ ■ A public prosecutor "differs from the usual advocate [in that] his duty is to seek justice, not merely to convict." ABA CODE OF PROFESSIONAL RESPONSIBILITY, EC 7-13; *see Berger v. United States*, 295 U.S. 78, 88 (1935). The prosecutor should not "use arguments calculated to inflame the passions or prejudices of the jury." ABA STANDARDS FOR CRIMINAL JUSTICE, Standard 3–5.8 (2d ed. 1980). Thus, in addition to the reversal of convictions, disciplinary proceedings against offending prosecutors are among the remedies the use of which may be anticipated in appropriate cases in the future.

■ The defendant's next argument relates to his pretrial request to take the deposition of the victim. *See* RSA 517:13. The court postponed granting the request until the defendant's counsel had reviewed the State's file. Thereafter, the request was repeated and the court then ordered the victim to set forth in an affidavit her account of the events giving rise to the complaint and stated that if, after reading the affidavit, the defendant felt it was "necessary to engage in further discovery with respect to the alleged victim . . . ," he could file an appropriate motion. No objection or exception was entered. The affidavit was provided but no further motion was filed, nor was there any complaint that the affidavit without a deposition was insufficient to prepare properly for trial. Under these circumstances, the defendant has waived his right to challenge the court's ruling. *See Martineau v. Perrin*, 119 N.H. 529, 531–32, 404 A.2d 1100, 1102 (1979).

■ The defendant next complains that, because of the small number of persons under the age of thirty included in the array,

the jury was not chosen from a fair cross-section of the community. We have not held that young people are a cognizable class and do not do so now. *See State v. Elbert*, 121 N.H. 43, 424 A.2d 1147 (1981). In *Elbert* we held that, even assuming that young people are a cognizable class, they are neither systematically excluded from nor unconstitutionally underrepresented in venires from which Rockingham County juries are selected. We have examined the evidence in this case and likewise find no unconstitutional underrepresentation of young people. Consequently, the jury trial below did not violate the defendant's sixth amendment right to a fair trial.

■ The defendant's final argument is that, because there was evidence that he was not amenable to treatment at the time of trial, the trial court erred in finding him to be a dangerous sexual offender under RSA ch. 173-A. This argument is without merit.

Under RSA 173-A:2, which defines the term "dangerous sexual offender," there is no requirement that a person be amenable to psychiatric treatment in order to be adjudicated a dangerous sexual offender. Moreover, the statute reflects the fact that there is no necessary relationship between amenability to treatment and dangerous sexual offender status. *See* RSA 173-A:3 I(a); RSA 173-A:6 II (Supp. 1979). Thus, although treatment is made available by RSA ch. 173-A, it is not necessary that the offender be amenable to it at the time his sentence is imposed.

The defendant has been sentenced to prison for his crimes, and the finding that he is a dangerous sexual offender simply permits his transfer from the State prison to the State hospital when and if he becomes amenable to treatment. *See Grindle v. Miller*, 119 N.H. 214, 217–18, 400 A.2d 787, 790 (1979). This approach is in full accord with the penal and rehabilitative purposes of RSA ch. 173-A. *See* RSA 173-A:1.

*Exceptions overruled; affirmed.*