Rockingham
No. 81-088

# THE STATE OF NEW HAMPSHIRE

v.

## CALVIN PRESTON

March 5, 1982

*Gregory H. Smith*, attorney general (*Brian T. Tucker*, attorney, on the brief and orally), for the State.

*John A. Macoul*, of Salem, by brief and orally, for the defendant.

BROCK, J. The defendant appeals his conviction by a jury of the crimes of kidnapping (RSA 633:1) and first-degree assault with a deadly weapon (RSA 631:1 (Supp. 1981)).

On appeal, the defendant raises issues concerning the composition of the juries which indicted and tried him, the admissibility of an in-court identification of him by the victim, the jury nullification instruction given by the trial court and its failure to grant his requested instruction on reasonable doubt.

In advance of trial, the defendant moved to quash the jury panel, alleging that the process by which jurors were selected was unconstitutional, and to quash the indictments returned by the grand jury. Alternatively, he requested that his motion be joined with other pending cases regarding jury selection, specifically *State v. Elbert*, 121 N.H. 43, 424 A.2d 1147 (1981). The Trial Court (*Mullavey*, J.) denied these motions and the defendant excepted. The defendant also moved to suppress an out-of-court identification of him by the victim, on the ground that the identification procedure employed by the police was impermissibly suggestive and otherwise improper. Further, he requested that the State not be permitted to allow anyone who had participated in an improper out-of-court identification (*i.e.*, the victim) to make an in-court identification of him.

Ruling that the out-of-court identification "appeared reliable," the Trial Court (*Temple*, J.) nevertheless granted the motion to suppress the out-of-court identification because the defendant was not given the opportunity to have counsel present at the time, but ruled that the victim would be permitted to identify the defendant at trial. The defendant excepted. The defendant also claims that the trial court erred in its instruction to the jury that they could act upon their "conscientious feeling about what is a fair result in the case" and when it refused to give his requested instruction on reasonable doubt, that lack of evidence can create a reasonable doubt.

### I. *Composition of the Jury*

■ The defendant contends that the composition, and the method of selection, of the grand jury which indicted him and the petit jury which tried him was discriminatory as to age and race, thereby violating his rights under the United States Constitution. U.S. CONST. amend. VI. In *State v. Elbert*, 121 N.H. 43, 424 A.2d 1147 (1981), also a Rockingham County case which the defendant concedes raised identical issues, we held that the jury selection process passed constitutional muster. We are aware of no reason that we should reconsider our decision in *Elbert*, and therefore reject the defendant's argument. *See State v. Reardon*, 121 N.H. 604, 605, 431 A.2d 796, 797 (1981). *See also* Laws 1981, ch. 527 (amending RSA ch. 500-A).

The defendant further claims that it was error for the court to deny him an opportunity to present evidence in support of his constitutional challenge to the juries and the process by which they were selected, or, in the alternative, to allow him to consolidate his challenge with *Elbert* proceeding. He argues that this was error because it effectively denied him an opportunity to have a complete record should he seek a writ of habeas corpus in the federal court system at some later date.

■ Even if the court erred when it denied the defendant's request, such error was harmless because, if the defendant should require a complete record on this issue in a habeas corpus proceeding, he may, at that time, under federal and State procedures, request that judicial notice be taken of the proceedings and this court's decision in the *Elbert* case. 1 WHARTON, CRIMINAL EVIDENCE § 63, at 102 (13th ed. 1972); *see generally LaBelle v. Hancock*, 134 F. Supp. 273, 275 (D.N.H. 1955); *Petition of Morin*, 95 N.H. 518, 523, 68 A.2d 668, 672 (1949) (in habeas corpus proceeding for custody of minor the court could properly take judicial

notice of pendency of criminal prosecution of minor's husband then pending in same court).

## II. *Admissibility of the In-Court Identification*

The second issue we consider is whether the victim's in-court identification of the defendant was properly admitted, after the trial court had suppressed testimony concerning the out-of-court identification on the ground that the defendant's sixth amendment right to counsel had been violated. *See* U.S. CONST. amend. VI.

Evidence at the suppression hearing indicated the following. On the evening of February 13, 1980, the victim went to a restaurant known as "Richard's 88" in Salem, New Hampshire, to meet friends and celebrate her birthday. She left the restaurant shortly after midnight and went to her car. As she was unlocking her car door, a man assaulted her and forced her into the car. While her assailant was trying to start the car, she tried to escape, but was immediately tackled from behind and pushed back into the car. The assailant then forced her at knife point to drive southerly on Route 28 towards Methuen, Massachusetts.

The restaurant parking lot and Route 28 were well-illuminated at the time, and the victim had ample opportunity to observe the man sitting next to her in the car. She had further opportunity to observe him when he forced her to stop at a car dealer's lot so that he could take over the driving. Again, he was unable to start the car, and he forced her to drive further south on Route 28. When they arrived in the vicinity of the Methuen Police Department, the victim suddenly turned into the police station parking lot, leaned on the automobile's horn, jammed on the brakes, exited the car and ran into the police station. She told the police that she had been assaulted and described her assailant as "a very light black man with a khaki green colored jacket and freckles." The police undertook a search for the assailant and, approximately ten to fifteen minutes later, arrested the defendant near the police station. The defendant fit the description given by the victim. The police took him to the police station for questioning. After advising the victim that they would bring somebody in for identification, they took the defendant to the room where the victim was present with her parents. She immediately and positively identified the defendant as her assailant.

■■ Once an out-of-court identification has been suppressed, in order for a subsequent in-court identification to be allowed, the State must prove by clear and convincing evidence that "the in-court identification ha[d] an independent source and [was] not

influenced by the out-of-court viewing . . . ." *State v. Leclair*, 118 N.H. 214, 221, 385 A.2d 831, 835 (1978); *Solomon v. Smith*, 645 F.2d 1179, 1188 (2d Cir. 1981); *see United States v. Wade*, 388 U.S. 218, 241 (1967). In a recent case, the United States Supreme Court explained the factors enumerated in *Wade*, which must be considered in applying the "independent origins" test. *United States v. Crews*, 445 U.S. 463, 473 n.18 (1980). Those factors are: the opportunity the victim had to observe the assailant (including the time period the victim could observe the assailant and the lighting conditions during the criminal episode); the existence of any discrepancy between the description given by the victim immediately after the crime and the defendant's actual description; any identification by the victim of a person other than the defendant, or the victim's failure to identify the defendant on a prior occasion; and, finally, the lapse of time between the alleged act and the identification. *Id.; United States v. Wade*, 388 U.S. at 241.

■ "The tests of independent origin set forth in *Wade* appear to be functionally identical to the reliability test articulated in *Neil v. Biggers* [409 U.S. 188 (1972)]." *Solomon v. Smith*, 645 F.2d at 1188. *Biggers* sets forth the factors to be considered in determining the reliability of an out-of-court identification when suggestive police procedures have been used. *Neil v. Biggers*, 409 U.S. at 199–200; *see State v. Gonzales*, 120 N.H. 805, 807–08, 423 A.2d 608, 610 (1980) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)).

■ In the present case, the trial court applied the *Biggers* factors to establish that the victim had an independent source for her in-court identification of the defendant and should therefore be permitted to identify the defendant at trial.

Although the trial court stated that it applied the *Biggers* factors, in effect it applied the burden of proof and the factors set out in *Wade. See Solomon v. Smith*, 645 F.2d at 1188.

The trial court decision permitting the in-court identification was based on the following findings:

> "The Court feels there is clear and convincing evidence that indicates that [the victim] had an opportunity throughout the incident following being tackled in the parking lot and being pushed in the car to observe and converse with the defendant. She remarked on the fact that even when her head was pushed against the window, she was able to look to the side and to see him. She remarked on the lighting, that it was a well lighted area—meaning down Route 28, the Newman Ford park-

ing lot, et cetera—as she was driving southbound. She was positive in her identification, and this all occurred during the incident. And the time factor was very short, meaning the twenty-minute ride, or twenty-plus-minute ride, and up until the time the one-on-one confrontation took place."

Although the court made no express reference to "the accuracy of the description," the evidence discloses that the victim's description of her assailant as a "very light black man," with a "khaki green colored jacket and freckles" was very accurate. The defendant, when apprehended near the Methuen Police Station, closely fit the victim's description.

The victim's testimony at the suppression hearing fully supported the court's finding that the State had sustained its burden of proving that the victim had the ability to identify her assailant based on "an independent recollection of her initial encounter with the assailant, uninfluenced by the pretrial [identification] . . . ." *United States v. Crews*, 445 U.S. at 473. She had sufficient opportunity to view the defendant and paid attention to him. As noted above, her description of him was accurate. Further, she identified the defendant "as soon as I looked at him." The time between the crime and the first confrontation was approximately fifteen to twenty minutes. *See, e.g., State v. Heald*, 120 N.H. 319, 323, 414 A.2d 1288, 1291 (1980) (out-of-court identification admitted where defendant identified within two-and-one-half days of crime); *State v. Gonzales*, 120 N.H. at 808, 423 A.2d at 610 (out-of-court identification admitted where defendant identified within twenty-four hours).

"[O]ur reliance on the fact that [she] identified [the defendant] in the out-of-court [confrontation] is not intended to assign any independent evidentiary value to [that] [identification] for to do so would undermine the exclusionary rule's objectives in denying the Government the benefit of any evidence wrongfully obtained. Rather, the accurate pre-trial identification assume[s] significance only to the extent that [it] indicate[s] that the witness' ability to identify [the defendant] antedated any police misconduct, and hence that in-court identification had an 'independent source.' " *Crews, supra* at 473 n.18.

We hold that the trial court properly permitted the victim to identify the defendant at trial.

III. *Jury Nullification*

The defendant's next claim is that the trial judge erred when, in

the course of his charge to the jury, he stated that they could act on their "conscientious feeling about what is a fair result· in the case." The defendant argues that this instruction amounted to "jury nullification," which led the jury to ignore or misapply the reasonable doubt standard and resulted in a possible lessening of the State's burden of proof.

■ Although we are of the opinion that this may be an instruction best given only when it is requested by a defendant or when the nature of a particular case otherwise warrants it, in *State v. Weitzman*, 121 N.H. 83, 89–90, 427 A.2d 3, 7 (1981), we upheld an identical jury instruction, noting specifically that "[j]ury nullification is an historical prerogative of the jury. . . . " *Id.* at 89, 427 A.2d at 7 (citing *United States v. Dougherty*, 473 F.2d 1113, 1130–37 (D.C. Cir. 1972)).

■ "A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *State v. Belkner*, 117 N.H. 462, 471, 374 A.2d 938, 944 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973)). Before the trial judge gave the instruction in question to the jury, he clearly instructed them with respect to the State's burden of proof:

> "If you have a reasonable doubt as to whether the State has proved any one or more of the elements of the crime charged, you *must* find the defendant not guilty. However, if you find that the State has proved all of the elements of the offense charged beyond a reasonable doubt, you *should* find the defendant guilty."

(Emphasis added.)

Contrary to the defendant's claim, the jury nullification instruction did not have the effect of lessening the State's burden of proof. Rather, as was indicated by the trial court's reasonable doubt charge, it, in effect, informed the jury that even if they found that the State had proved beyond a reasonable doubt all the elements of the offenses charged, they could still acquit the defendant. *See generally United States v. Dougherty*, 473 F.2d at 1130–37. The court's instructions to the jury thus precluded them from finding the defendant guilty, if the State had not met its burden of proving all the elements of the offenses charged beyond a reasonable doubt, but also left them the option of acquitting him if it was their "conscientious feeling" that a not-guilty verdict would be the "fair result" in the case, even if the State had met its burden of proof. We must assume that the jurors followed the court's instructions.

*State v. Preston*, 121 N.H. 147, 150, 427 A.2d 32, 34 (1981); *State v. Novosel*, 120 N.H. 176, 186, 412 A.2d 739, 746 (1980).

Considered as a whole, the jury instructions did not tend to mislead the jury as to the State's burden of proof, and we therefore find no error. *See State v. Wentworth*, 118 N.H. 832, 841, 395 A.2d 858, 864 (1973) (citations omitted).

IV. *Failure To Grant Requested Instruction*

 In his last argument, the defendant asserts that the trial court erred when it failed to give his requested instruction to the jury, that a reasonable doubt may arise not only from the evidence produced, but also from a "lack of evidence." The defendant relies on this court's decision in *State v. Aubert*, 120 N.H. 634, 421 A.2d 124 (1980). In that case, we held that a trial court's refusal to charge the jury on a party's theory of defense, if such theory is supported by some evidence, is reversible error. *Id.* at 635, 421 A.2d at 125.

Unlike *Aubert*, the defendant here did not request a charge on a defense not mentioned in the court's original instruction. Rather, he in effect requested that the court elaborate on its reasonable doubt charge by instructing the jury that reasonable doubt may arise not only out of all evidence presented but also out of "lack of evidence."

 It is generally accepted that the trial court is not required to give such an instruction, but that it is within its *discretion* to do so. *United States v. Caruso*, 358 F.2d 184, 186–87 (2d Cir.), *cert. denied*, 385 U.S. 862 (1966); *see United States v. Smith*, 602 F.2d 834, 838–39 (8th Cir.), *cert. denied*, 444 U.S. 902 (1979); *Foran v. Metz*, 463 F. Supp. 1088, 1092 (S.D.N.Y.), *aff'd*, 603 F.2d 212 (2d Cir. 1979).

 The reasonable doubt charge, as given by the trial court, employed the language we require under *State v. Wentworth*, 118 N.H. at 838–39, 395 A.2d at 862–63. In its entirety, the instruction conveyed the correct concept of reasonable doubt. *Id.* at 837, 395 A.2d at 862; *State v. Belkner*, 117 N.H. at 471, 374 A.2d at 944; *see also Foran v. Metz*, 463 F. Supp. at 1092. Accordingly, we hold that the trial court did not abuse its discretion in declining to instruct the jury as requested.

*Exceptions overruled; affirmed.*

All concurred.