Rockingham
No. 84-088

## THE STATE OF NEW HAMPSHIRE

### v.

### BRUCE VANGUILDER

April 5, 1985

*Gregory H. Smith,* attorney general (*Edna M. Conway,* attorney, and *T. David Plourde,* assistant attorney general, on the brief, and *Ms. Conway* orally), for the State.

*Jeffco, May & Smart,* of Portsmouth, and *John A. Macoul,* of Salem (*Mr. Macoul* and *Stephen T. Jeffco* on the brief, and *Dennis May* orally), for the defendant.

BATCHELDER, J.   The defendant, Bruce Vanguilder, having been found guilty by a jury in Superior Court (*Bean,* J.) of the crimes of aggravated felonious sexual assault,  RSA 632-A:2 (Supp. 1983), and burglary, RSA 635:1, appeals his conviction on a variety of grounds. We affirm the convictions.

The facts on the record warrant the following findings. On the night of May 19, 1983, Mildred Hall was raped in her home by an assailant. Earlier that night, the defendant, together with two friends, took an off-road trip in the defendant's jeep. The defendant and his friends had been drinking. During the evening, the defendant vomited, with some of the vomitus falling upon his beard.

While the three were travelling off-road, the jeep got stuck in the mud. After fifteen to twenty minutes of vain efforts to free the jeep, the defendant, at approximately 10:15 p.m., left his friends with the jeep and walked to the home of 84-year-old Mildred Hall to telephone for help. The defendant knocked on Hall's door and asked for help. She told him she could not let him in, but would telephone for him. They moved to her window, which she unlocked. Hall passed a telephone book out the window to the defendant. The defendant requested that Hall call Chester Nicholaisen, which she did while the defendant remained outside. The call was placed at 10:50 p.m. and woke Nicholaisen out of bed. Nicholaisen told her that he would not help. Hall relayed this message to Vanguilder and suggested he contact a garage. Vanguilder then walked away from the house. Hall resecured her window and moved toward her living room to resume her reading in preparation for bed.

Within the brief time that it took for Hall to move to her living room, she heard a crashing sound at her rear kitchen door. A large man, wearing a light-colored shirt pulled around his face, ran directly toward her, grabbed her, carried her to her bedroom and forced sexual intercourse. Hall testified that her assailant had whiskers or a beard and had an awful stench about him. As the assailant rose to leave, Hall noticed he was wearing dark trousers. The assailant fled through the rear door from which he entered. The incident lasted approximately an hour, until about midnight.

Hans Nicholaisen, the son of Chester Nicholaisen, testified that the defendant arrived at his house and banged on his door. Checking his clock, Nicholaisen observed that it was 12:10 a.m. Nicholaisen then left with the defendant in Nicholaisen's truck to attempt to extricate the defendant's jeep from the mud. The truck became stuck in the mud, and the defendant, his two friends, and Nicholaisen walked back to Nicholaisen's house. As they passed Hall's house, the defendant commented to the effect that he, Vanguilder, did not rape old ladies.

Hall was unable to phone for help during the night of the incident because her phone wires had been cut, most likely by the assailant. The next day, Hall went to a neighbor's house from which the police were contacted. The sheriff's deputy and State trooper who investigated the scene testified that the door panels evidenced a forced entry. They also noted that kick marks on the lower part of the exterior of the door were embedded with mud. The sheets in Hall's bedroom were muddied at the foot of the bed. A warrant was obtained to search the defendant's house, where the police seized the defendant's muddied pants and a light-colored T-shirt, which the defendant said he had worn the previous night.

Prior to trial, the State filed a notice of intent to use prior convictions to impeach the defendant's testimony. *See* SUPER. CT. R. 68. After a hearing on the record, *see State v. Staples*, 120 N.H. 278, 285, 415 A.2d 320, 324 (1980), the court excluded a counseled 1977 conviction for attempted theft by unauthorized taking. However, the court ruled admissible for impeachment purposes the defendant's counseled convictions for simple assault and criminal threatening arising out of a September 30, 1980, incident and another simple assault arising out of an August 16, 1980, incident. Over defendant's objection, the court ruled that the probative value of these convictions outweighed their prejudicial effect, especially in light of the type of crimes charged in the instant case. The trial court also denied the defendant's motion to have the jury walk the route from where the jeep was mired to Hall's home and, over defendant's objection, ruled that the jury would drive along those portions of the route which would be accessible by bus.

Defendant objected at trial to the jury panel on two grounds: (1) that several jurors empaneled in the case had been on the list of prospective jurors for longer than 30 days in derogation of RSA 500-A:8; and (2) that a number of jurors for the jury pool were produced by telephone calls to prospects' homes during the day, thereby creating a disproportionate number of unemployed or elderly persons in the pool, from which an unrepresentative jury was selected.

Defendant also objected at trial to the prosecutor's opening statement as inflammatory and prejudicial to his case, and to the prosecutor's comment in closing argument about the defendant's failure to call particular witnesses. The defendant objected to the jury instructions on the grounds that the trial judge failed to instruct that a reasonable doubt could arise from the State's lack of evidence and failed to include a jury nullification instruction. After a guilty verdict, defendant's motions for a new trial and judgment n.o.v. were denied. This appeal followed.

The question of sufficiency of the evidence is one of the defendant's identity as the assailant. No one directly identified the defendant as the assailant; therefore, the evidence against him is strictly circumstantial.

On appellate review of a conviction, the evidence must be viewed in the light most favorable to the State, with all reasonable inferences drawn from those facts. *State v. Holt*, 124 N.H. 645, 647, 474 A.2d 1031, 1033 (1984). The evidence will be deemed insufficient only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Id.* Circumstantial evidence alone may warrant a conviction where the evidence precludes all rational con-

clusions other than the defendant's guilt beyond a reasonable doubt. *State v. Ouellette*, 125 N.H. 602, 603, 484 A.2d 1148, 1149 (1984).

In this case, the timing of events points strongly toward defendant's guilt, particularly defendant's presence at the victim's house at about 10:40 p.m., the call to Chester Nicholaisen at 10:50 p.m., the almost instantaneous breaking into the victim's house after the discussion between the defendant and the victim, the assailant's leaving the victim's house at midnight, and the defendant's arrival at the Nicholaisens' house at 12:10 a.m. Other circumstantial identity evidence precludes rational findings other than defendant's guilt. The muddied state of the defendant's shoes and clothing is consistent with the mud found on the bedsheets and embedded in the kick marks on the victim's door. The defendant's light-colored T-shirt and dark pants which he wore during the night in question match the description of the assailant's clothing. The victim's characterization of her assailant's beard or whiskers and his horrible stench are consistent with the defendant's having a beard and his drinking and vomiting that night prior to approaching the victim's house.

Finally, defendant's unprompted comment while passing the victim's house later that night about his not raping old ladies is rationally explainable only if the defendant knew that the victim had been raped. Since only the assailant could have known of the incident until the next day, this evidence strongly suggests that the defendant and the assailant were one and the same.

■ It necessarily follows that the trial judge properly denied the defendant's motion for directed verdict and post-trial motion for judgment n.o.v.

■ In ruling upon the admissibility of the three prior convictions in question, the trial court relied in part upon this court's holding in *State v. Robinson*, 123 N.H. 532, 465 A.2d 1201 (1983), which in turn has its precedential base in the earlier holdings in *State v. Wayne Kelley*, 120 N.H. 14, 18–19, 413 A.2d 300, 303–04 (1980), and *State v. Duke*, 100 N.H. 292, 293–94, 123 A.2d 745, 746 (1956). These cases collectively stand for the proposition that evidence of prior convictions is admissible if it will be of assistance in properly evaluating the testimony of the defendant witness and if its probative value exceeds its prejudicial effect.

The trial court in this case made findings on the record, as required by *State v. Staples*, 120 N.H. 278, 285, 415 A.2d 320, 324 (1980). The court reasoned as follows:

> ". . . I am well aware of the problems involved with the use of prior convictions. If we're trying to determine the

probative value of these convictions, the Court must consider that the defendant, when he takes the stand, is asking the jury to believe him, and the jury is entitled to know, under our cases, what kind of an individual he is. He is charged with serious offenses involving threats and the physical ability to overcome resistance of the victim in this case. The convictions which I have permitted involve the use of threats and physical violence on the part of the defendant. It is for that reason that I have permitted them in. It is for the same reason that I kept out the theft charges."

■ The trial court, lacking the benefits of time and resources available to an appellate court, perhaps did not express the reasons for its ruling in classical terms. The court nevertheless found the probative value to outweigh the prejudice, and, on the record before us, we cannot say that it erred in this judgment.

■ The defendant asserts that his trial was not fair because of the composition of the jury panel which found him guilty. RSA 500-A:8 provides that no juror shall be required to serve longer than thirty days except to complete a trial. There is nothing to suggest that this provision is intended to prevent a juror from serving a longer period, nor is there any showing of prejudice to this defendant from the presence of such jurors on the panel that found him guilty. Accordingly, we find no merit in this claim of error.

Defendant challenges the jury on the basis that it was not selected from a fair cross-section of the community. After the first eleven jurors were seated, the jury pool was exhausted. Additional prospective jurors were reached by telephone. Of this second pool of eleven potential jurors, the average age was 63.1 years; seven of them were over 62, eight were unemployed, and seven were retired. Defendant claims that, as a result, he was precluded from having among these prospective jurors persons who had employment, since only those who were unemployed or retired would have been at home to answer the telephone during business hours.

■■ In order to establish a prima facie violation of the fair cross-section requirement, the defendant must demonstrate:

"(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is

due to systematic exclusion of the group in the jury-selection process."

*Duren v. Missouri*, 439 U.S. 357, 364 (1979); *State v. Elbert*, 121 N.H. 43, 45, 424 A.2d 1147, 1148–49 (1981); *LaRoche v. Perrin*, 718 F.2d 500 (1st Cir. 1983). There being no factual record of such a prima facie violation in this case besides assertions of counsel, the defendant's argument fails. *Cf. LaRoche v. Perrin, supra* at 501 (U.S. census data and testimony of court clerk, attorneys, selectmen, statistics professor, assistant county attorney and public defender staff established evidentiary record to meet defendant's burden).

The defendant also seeks relief based on the failure of the trial court to give a requested instruction on jury nullification. The court instructed as follows:

"[I]f you have a reasonable doubt as to whether the State has proved any one or more of the elements of the offense charged, you *must* find the defendant *not guilty.* However, if you find that the State has proven all of the elements charged beyond a reasonable doubt, you *should* find the defendant *guilty.*"

(Emphasis added.) The court declined to give the following proffered instruction:

"Therefore, even if you find that the State has proven all of the elements of the offense beyond a reasonable doubt, you may still find the defendant not guilty."

The failure to give this latter instruction in this case was not error. *State v. Mayo*, 125 N.H. 200, 203, 480 A.2d 85, 87 (1984); *State v. Preston*, 122 N.H. 153, 161, 442 A.2d 992, 996 (1982); *State v. Weitzman*, 121 N.H. 83, 89–90, 427 A.2d 3, 7 (1981).

A review of the record leads us to conclude that the remaining claims of error, concerning the State's opening statement, the discretion exercised by the trial court with respect to the view, comment by the State on the defendant's failure to produce certain witnesses, and the denial of a requested instruction on the reasonable doubt standard, are all without merit.

*Affirmed.*

All concurred.