Strafford
No. 84-560

THE STATE OF NEW HAMPSHIRE

v.

JAMES WINDERS

December 5, 1985

*Stephen E. Merrill*, attorney general (*William H. Lyons*, attorney, on the brief), by brief for the State.

*Charles D. Burkham* and *Donald R. Routhier*, of Somersworth, by brief for the defendant.

KING, C.J. The defendant was indicted on seven counts of burglary. RSA 635:1. The trial court ordered five of the counts severed. After a jury trial in Superior Court (*Temple*, J.), the jury returned a verdict of guilty on one count and not guilty on the other. The defendant appeals. We affirm.

Winders was charged and convicted of burglarizing the home of Raymond Beaudoin of Rochester on January 4, 1984. He was also charged with burglarizing the home of Gail Richards and Susan Michalsky in Rochester on December 12, 1983. He was found not guilty on that charge.

Prior to trial, the defendant moved to sever the two burglary charges for separate trials. He also moved to suppress an in-court identification of him by Beaudoin on the ground that the out-of-court identification procedures used by the police were unduly suggestive and would taint any in-court identification. Both motions were denied. During the trial, the defendant objected to the admission of an unsigned, typewritten statement made by an unavailable witness on the ground that it was hearsay and not within any exception to the hearsay evidence rule. The objection was overruled.

On this appeal we must decide three questions: (1) whether the superior court abused its discretion in not severing the two burglary counts, (2) whether there was a sufficient independent basis to allow an in-court identification, and (3) whether the hearsay testimony was properly allowed into evidence.

## I. *Severance*

■■ "The decision to join or to sever cases for trial is within the discretion of the trial court." *State v. Whitney*, 125 N.H. 636, 639, 484 A.2d 1158, 1160 (1984) (citing *State v. Lainey*, 117 N.H. 592, 595, 375 A.2d 1162, 1164 (1977)). We will uphold the trial court's ruling unless it is shown that the defendant's right to a fair trial was jeopardized by non-severance. *State v. Freije*, 109 N.H. 290, 291, 249 A.2d 683, 684 (1969).

■ In this case, the trial court did not abuse its discretion in declining to sever the two burglary charges, since the defendant's right to a fair trial was not jeopardized by the joinder of the charges. On our reading of the trial transcript, the evidence in support of each of the burglary offenses was not lengthy, was simple and unlikely to confuse a jury, and was easily referable to each crime. *Dunaway v. United States*, 205 F.2d 23, 26–27 (D.C. Cir.

1953); *see United States v. Clayton,* 450 F.2d 16, 18–19 (1st Cir. 1971), *cert. denied, Clayton v. United States,* 405 U.S. 975 (1972). In fact, the State called a total of only seven witnesses, and the greater part of the testimony involved descriptions of the burglaries, an identification of the defendant, and reports by several witnesses of conversations they had with the defendant.

## II. *In-court Identification*

Beaudoin returned to his home in Rochester at about 6:30 p.m. on January 4, 1984, and, as he opened his front door, encountered a burglar. Beaudoin and the burglar had a brief confrontation on Beaudoin's front porch, which was lit only by a street light located across the road. While the two exchanged words, the burglar held a knife which was pointed at Beaudoin's stomach. Beaudoin described the burglar to police as a man, six feet tall, with a thin moustache.

During their investigation of the Beaudoin burglary, the Rochester police made two out-of-court attempts to have Beaudoin identify the man who burglarized his home.

In the first attempt, which occurred about two or three weeks after the burglary, the police showed Beaudoin seven black and white photographs with identification numbers on the front. After eliminating all but two of the photographs, Beaudoin picked the defendant's photograph because the face in the other photograph was pockmarked and because the defendant had a "similar style face" to that of the burglar.

In a second identification attempt, which took place within four to five weeks of the burglary, the police had Beaudoin view the defendant through a one-way mirror. The defendant was sitting sideways in front of the one-way mirror, and Beaudoin had what he described as a "one-third view in the back" of the defendant. Beaudoin was unable to identify the defendant as the burglar.

The State agreed not to use the results of either out-of-court identification procedure in court because they had lost the photographs from the photographic array session, and because the one-way mirror viewing did not result in an identification.

Prior to trial, the defendant moved to suppress an in-court identification of the defendant by Beaudoin on the ground that the out-of-court identification procedures that the police used were unduly suggestive and would taint any in-court identification. After a hearing on the motion, the Superior Court (*Temple,* J.) ruled that an in-court identification would not be suppressed. In its ruling, the court noted:

"Testimony was offered to allow the Court to determine

whether any in court [sic] identification would have resulted from either the photo [sic] array session or the one-way mirror session. It is clear that any identification would result from neither. If an identification is made in Court it will rest solely on what the victim says he was able to observe on the night of the offense."

■ We will not overturn the trial court's finding unless, after reviewing the record, we conclude that it is contrary to the weight of the evidence. *State v. Reynolds*, 124 N.H. 428, 434–35, 471 A.2d 1172, 1175 (1984) (citation omitted).

■ When an out-of-court identification has been suppressed as being unduly suggestive and otherwise unreliable, a subsequent in-court identification will be allowed only if the State proves by clear and convincing evidence that "'the in-court identification ha[d] an independent source and [was] not influenced by the out-of-court viewing. . . .'" *State v. Preston*, 122 N.H. 153, 157–58, 442 A.2d 992, 994 (1982) (quoting *State v. Leclair*, 118 N.H. 214, 221, 385 A.2d 831, 835 (1978)).

In this case, evidence of neither out-of-court identification session was suppressed, because the State stipulated that it would not attempt to use such evidence at the trial. However, we infer that the judge determined that suppression of at least one of the two out-of-court identification procedures would have been justified, because he reached the question of whether any subsequent in-court identification would be based on an independent source uninfluenced by the out-of-court viewings. *See State v. Stoehrer*, 123 N.H. 661, 664, 465 A.2d 905, 908 (1983); *Leclair, supra* at 220–21, 385 A.2d at 835.

■ In determining whether a subsequent in-court identification is "independent," and will thus be allowed into evidence, a court should consider the five factors set forth in *United States v. Wade*, 388 U.S. 218, 241 (1967). *State v. Preston, supra* at 158, 442 A.2d at 995; *see United States v. Crews*, 445 U.S. 463, 473 n.18 (1980). We most recently enumerated the five *Wade* factors in *State v. Philibotte*, 123 N.H. 240, 459 A.2d 275 (1983): "[T]he trial court should consider the opportunity of the witness to observe the defendant, the existence of any discrepancy between the initial description and the defendant's actual appearance, the witness' misidentification of the defendant or failure to identify him on a prior occasion, and the time between the alleged crime and the identification." *Id.* at 243, 459 A.2d at 276 (citations omitted).

■ In this case, there was sufficient evidence in the record for the trial court to conclude that there was an independent source for

Beaudoin's in-court identification of the defendant, and that the in-court identification was not influenced by the out-of-court viewings. Beaudoin testified that his encounter with the burglar lasted two to three minutes. He reported that the street light provided adequate illumination for a view of the burglar's face, and that during part of the encounter he was only a few feet from the burglar. Beaudoin's initial description of the burglar, although general, did match the defendant's actual description. Beaudoin never identified anyone besides the defendant as the burglar. Although Beaudoin failed to identify the defendant during the one-way mirror session, the police offered Beaudoin only a very limited view of the defendant at that time. The trial court, therefore, did not err in declining to suppress the in-court identification.

III. *Hearsay*

During the trial, the State called Jack McKee, an acquaintance of the defendant, as a witness. However, when the prosecutor asked McKee, "Did you and Mr. Winders ever have a conversation with regard to Mr. Beaudoin?", McKee refused to answer the question, invoking his privilege against self-incrimination under the fifth amendment to the United States Constitution. After an unrecorded conference in chambers with counsel for both parties and McKee's attorney, the trial court ruled that McKee could assert his privilege, and it ruled that he was thus an unavailable witness.

Later in the trial, another State's witness, Captain David Hall of the Rochester police, read into evidence the following portion of an unsigned, typewritten statement given by McKee to the police:

> "About the oil man, I know who did it. And he has the knife, and it is hidden at the Winedock (phonetic) Mill. Jim Winders did it, and he held the knife up to the man's throat. The knife is in a green sheath, a machete, and the knife was a Marine Corps knife. It was Ray Beaudoin's house."

The defendant objected to admission of the statement on the ground that it was hearsay not within any exception. The trial judge over-ruled the objection and noted that, "The Court's ruling is that he is unavailable, and it is offered on that basis as an exception to the hearsay rule."

On appeal, the defendant contends that McKee's statement to the police was inadmissible hearsay because it did not have a circum-stantial guarantee of trustworthiness and because it was hearsay within hearsay.

▉ Whether testimony is admissible as an exception to the hearsay rule is ordinarily for the trial court to determine, and we will not disturb its determination unless we find it to be clearly erroneous. *Town of Weare v. Paquette*, 121 N.H. 653, 659, 434 A.2d 591, 596 (1981) (citations omitted). An extrajudicial statement will not be excluded from evidence by the hearsay rule if the declarant is unavailable and there is "the circumstantial guarantee of trustworthiness . . . ." *Caledonia, Inc. v. Trainor*, 123 N.H. 116, 121–22, 459 A.2d 613, 616 (1983); *Roberts v. Claremont Power Co.*, 78 N.H. 491, 495, 102 A. 537, 539 (1917); *see* N.H. R. Ev. 804(b)(6). However, in order for a hearsay declaration "which itself contains a hearsay statement, to be admissible to prove the truth of the included statement, both the statement and the included statement must meet the tests of an exception to the hearsay rule." *State v. Gomes*, 116 N.H. 113, 114, 352 A.2d 713, 714 (1976).

▉▉ The moving party, in this case the defendant, has the burden of "presenting a record sufficient to allow this court to decide the issue presented on appeal." *Brown v. Cathay Island, Inc.*, 125 N.H. 112, 115, 480 A.2d 43, 44 (1984); Sup. Ct. Rs. 13, 15. The burden includes, when necessary, providing a record of proceedings held in chambers. *Brown, supra* at 115, 480 A.2d at 45. In this case, there is no indication in the record that the defendant even raised below the two issues of a circumstantial guarantee of trustworthiness and hearsay within hearsay. Nor is there a record of any rulings on these issues.

▉▉ When presented with an inadequate record, we will not find that a trial court's admission of testimony, as an exception to the hearsay rule, is clearly erroneous. *Cf. Brown, supra* at 115, 480 A.2d at 44 (on an inadequate record, we will not find abuse of discretion by the trial court in admitting or excluding evidence). We thus cannot conclude that the trial court was clearly erroneous in admitting McKee's statement under an exception to the hearsay rule.

*Affirmed.*

All concurred.