Boetti v. Warden, NH State Prison      CV-98-442-JD  11/23/98

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Charles Boetti

       v.                              Civil No. 98-442-JD

Warden, N.H. State Prison


                        O R D E R


     The petitioner, Charles Boetti, brings this habeas corpus action and asserts that his incarceration at the New Hampshire State Prison is unconstitutional as his right to due process of law was violated.  The court dismisses the complaint because it finds that the petitioner has failed to exhaust remedies available in the state courts (document no. 1).  See 28 U.S.C.A. § 2254(b).


                       Background

     The petitioner, Charles Boetti, was tried on June 6, 1995, for four counts of aggravated felonious sexual assault.  He was convicted on two counts and the jury deadlocked on the remaining two counts.  He was sentenced to seven and a half to fifteen years at the New Hampshire State Prison.

     During closing arguments, the prosecutor made a number of statements that the New Hampshire Supreme Court found to be improper.  See State v. Boetti, 142 N.H. 255, 261 (1997).  The

prosecutor expressed her opinion on whether the testimony of the witness-victim was honest.  In an apparent effort to circumvent a ruling of the trial court, the prosecutor provided a legal definition to the jury that the court had refused to include in the jury instructions.  Finally, the prosecutor commented upon the integrity and ethics of the defense counsel.  After each transgression, the court issued curative instructions to the jury, directing them to disregard the improper comments.

The petitioner appealed his conviction on the two counts of felonious sexual assault, arguing that the trial court erred by: (1) failing to remedy the prosecution's improper conduct with adequate curative instructions; (2) denying the petitioner's motion to dismiss the case predicated upon the prosecutor's conduct; and (3) refusing to set aside the verdict, again predicated upon the prosecution's conduct.  The petitioner asserted that reversal was in order as the prosecutor's conduct amounted to intentional or grossly negligent misconduct that prejudiced the petitioner.

The New Hampshire Supreme Court affirmed the petitioner's conviction.  As identified above, the court concluded that the prosecutor's comments were improper, but also found that the petitioner had failed to object in a timely fashion to all but one of the instructions.  Regarding the preserved objection, the

2

court found the trial court was reasonable when it determined that the jury instructions eliminated any prejudice. Moreover, in reviewing the trial court's denial of the petitioner's motion to dismiss and its refusal to set aside the verdict, the supreme court found it reasonable to hold "that the prosecutor's actions, taken as a whole, did not rise to the level of intentional misconduct or gross negligence which mandates a new trial." See Boetti, 142 N.H. at 262.

The petitioner filed this habeas corpus complaint on July 22, 1998. The petitioner asserts that his right to due process of law was violated by: (1) the trial court's alleged failure to remedy the prosecution's improper conduct with adequate curative instructions; (2) the trial court's denial of the petitioner's motion to dismiss the case predicated upon the prosecutor's conduct; and (3) the trial court's refusal to set aside the verdict, again predicated upon the prosecution's conduct.

The respondent, Michael Cunningham, warden of the New Hampshire State Prison, argues that dismissal of the petitioner's request for relief is appropriate because: (1) the petitioner failed to fairly present his claims to the state courts, and therefore has not exhausted his state remedies; (2) the petitioner did not comply with New Hampshire's procedural requirements for presenting a constitutional claim, and is

therefore barred from invoking such claims as grounds for federal habeas relief; and (3) the petitioner cannot show that the decision of the New Hampshire Supreme Court was contrary to or an unreasonable application of United States Supreme Court precedent.

## Discussion

The requirement that a petitioner bringing a habeas corpus action first exhaust remedies available through the state courts has its origins in comity. See, e.g., Scarpa v. Dubois, 38 F.3d 1, 6 (1st Cir. 1994). 28 U.S.C.A. § 2554(b) provides: An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . ." To meet the exhaustion requirements, "the petitioner must have fairly presented the substance of his habeas claim to the state court before seeking federal review." Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987). Exhaustion requires that "both the factual and legal underpinnings of his claim [be presented to] the state courts." Nadworny v. Fair, 872 F.2d 1093, 1096 (1st Cir. 1989); see also, Gagne, 835 F.2d at 7; Dougan v. Ponte, 727 F.2d 199, 201 (1st Cir. 1984). Generally, as is true in this case, the

4

determinative issue for an exhaustion review is not whether the same factual basis has been presented, but whether the same legal theory has been presented in both federal and state courts. See Nadworny, 872 F.2d at 1096.

The First Circuit has developed a set of guidelines for evaluating whether the petitioner has indeed presented the same legal theory to the state tribunal. Courts are to consider if the petitioner has: "1) cited a [federal] constitutional provision; 2) relied on federal constitutional precedent; or 3) claimed a determinate right that is constitutionally protected." Id. In addition, a petitioner may have sufficiently presented the federal claim to the state court if the petitioner presented the "substance of a federal constitutional claim in such a manner that it must have been likely to alert the court to the claim's federal nature," id. at 1097 (citations and quotations omitted), or if the petitioner has presented a claim before the state court "arising under and asserted in terms of state law, [that] may, as a practical matter, be indistinguishable from one arising under federal law," id. at 1099.

The "habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim." Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997). To meet his burden, the

5

"petitioner must demonstrate that he tendered each claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" <u>Id.</u> (quoting <u>Scarpa</u>, 38 F.3d at 6).

In this case, the petitioner did not cite any provision of the Federal Constitution in his appeal to the New Hampshire Supreme Court. The petitioner cited only state case law, with the exception of a parenthetical citation to a federal case which a state court decision quoted. Nor did the state precedent that the petitioner relied upon address federal due process claims. The petitioner only once identified a claim of due process, which was never again revisited in his appeal. In that claim he asserted that the prosecution's "continued improper argument after objection constitutes gross negligence [sic] violated defendant's right to due process under the New Hampshire Constitution, Part I, Article 15 and requires a reversal of the conviction." Brief for the Defendant at 6, <u>State v. Boetti</u>, 142 N.H. 255 (1996) (No. 96-026) ("Def.'s Brief"). Invoking the phrase "due process" or "fair trial" without more is inadequate to present a federal claim to the state court. <u>See</u> <u>Dougan</u> 727 F.2d at 210; <u>Gagne</u>, 835 F.2d at 7. Here, the petitioner specifically cited the state, not the federal, constitution.

The petitioner argues that because the Supreme Court of New

6

Hampshire has interpreted the New Hampshire Constitution to provide even greater due process protection than the Federal Constitution and the analysis is the same, he sufficiently presented a federal due process claim to the state court. The petitioner's argument potentially implicates the "fifth" method identified in Nadworny in which a petitioner may present a claim to the state court. A federal claim may be presented to a state court when the state claim advanced by the petitioner is essentially indistinguishable from the federal claim. 872 F.2d at 1099-1100. In this case, however, the petitioner's state due process claim is not indistinguishable from his federal due process claim.

Before the supreme court, the petitioner's arguments focused on consideration of whether there was prosecutorial overreaching such that the prosecution engaged in intentional misconduct or was grossly negligent. It focused on the culpability of the prosecutor. See Def.'s Brief at 10 ("Prosecutorial overreaching occurs when 'through gross negligence or intentional misconduct, [sic] caused aggravated circumstances to develop which seriously prejudiced a defendant . . . .'" (citations omitted)); id. at 11 ("To continue to engage in the same type of argument is to act with gross negligence, if not intentionally.") (("intentional, repetitive misconduct") (quotations and citations omitted)) (this

7

case is one of "intentionally improper argument"); id. at 14 ("there are many instances of repetitive intentional misconduct").  These allegations and arguments are elements of a state claim of prosecutorial overreaching.  See Boetti, 142 N.H. at 260 ("A prosecutor's actions may constitute overreaching when, through intentional misconduct or gross negligence, the prosecutor has produced a situation in which the defendant could reasonably . . . conclude that a continuation of the tainted proceeding would result in his conviction.") (citations and quotations omitted).  Indeed, throughout the brief the petitioner relied on cases analyzing state claims of prosecutorial overreaching emphasizing the prosecutor's degree of culpability. In his conclusion, the petitioner cited State v. Preston, 121 N.H. 147 (1981), where the New Hampshire Supreme Court discussed the problem of prosecutorial overreaching and stated that they would take a firmer stand against such conduct in the future. The petitioner urged the supreme court to do so in his case.  See Def.'s Brief at 18.

In contrast, a claim of a due process violation under the Federal Constitution centers upon the fairness of the trial to the petitioner.  See, e.g., Ferreira v. Fair, 732 F.2d 245, 240 (1st Cir. 1984) ("In cases of alleged prosecutorial misconduct, the touchstone of due process analysis . . . is the fairness of

8

the trial, not the culpability of the prosecutor.") (quotations and citations omitted). Therefore, analysis of the petitioner's state claim would not parallel nor necessarily involve consideration of the same factors as a federal due process claim. Under the petitioner's state claim, not only is a necessary element the grossly negligent or intentional misconduct of the prosecutor, but consideration is also given to the deterrent effect on future prosecutions. See Boetti, 142 N.H. at 260 ("Intentional or repetitive misconduct by a prosecutor may require reversal of a conviction.") ("Reversal may also be appropriate when the prosecutor's conduct was so egregious that reversal becomes a desirable sanction to forestall future prosecutorial trespasses.") (quotations and citations omitted); see also, State v. Preston, 121 N.H. at 151 (considering "continuing problem" of prosecutorial overreaching in reviewing such claims in future). The petitioner's state claim is not indistinguishable from a federal due process claim.

For these reasons, the petitioner's reliance on Lanigan v. Maloney is misplaced. See 853 F.2d 40 (1st Cir. 1988). In Lanigan, the petitioner's "claim to both the state and federal courts depend[ed] upon resolution of the same question - whether the language of the trial judge's instructions gave a clear sense of the degree of proof necessary to convict. [It was]

9

unquestionably a case in which the difference in petitioner's arguments to the state and federal courts represented 'a mere variation[] in the same claim rather than a different legal theory.'" 853 F.2d at 45 (quoting Wilks v. Israel, 627 F.2d 32, 38 (7th Cir. 1980)). Here, the same legal theory was not advanced. This is evidenced by the New Hampshire Supreme Court's resolution of the petitioner's appeal on the grounds that the prosecutor's misconduct was not grossly negligent or intentional. Where the decision turned on the state tribunal's conclusion that any prejudice was expunged by the curative instructions, the petitioner has failed to establish that this was not simply the second element of the state claim of prosecutorial overreaching.

The petitioner's appeal before the New Hampshire Supreme Court did not fairly present "the substance of a federal constitutional claim in such a manner that it 'must have been likely to alert the court to the claim's federal nature.'" Nadworny, F.2d at 1097 (quoting Daye v. Attorney General of New York, 696 F.2d 186, 192 (2nd. Cir. 1982) (en banc)). Factors the First Circuit has indicated would likely alert a court to the presence of a federal claim are absent in the petitioner's appeal. The petitioner did not rely on federal cases employing constitutional analysis. See Nadworny, 872 F.2d at 1097-98. Although the petitioner did raise the issue of fairness and

10

prejudice before the New Hampshire Supreme Court, cloaked in the garb of his state claim of prosecutorial overreaching it is not at all clear that these references would identify the claim as one asserting a federal due process claim. See id. at 1098. The petitioner did not rely on state cases employing federal constitutional analysis. See id. at 1101. Nor did the petitioner's appeal, as filed, allege a pattern of facts within the mainstream of constitutional litigation such that the New Hampshire Supreme Court could be said to have been alerted to the federal claim. Indeed, the First Circuit's language in Nadworny is readily applicable to this case: "Comity . . . would be ill-served if the presentation, while embodying a nascent federal claim, so focused attention on state-law aspects as to mask its federal qualitites." Id. at 1098. The court finds the petitioner's claims unexhausted.[1]

---

[1]The court does not here address the five comments made by the prosecutor before the jury that the New Hampshire Supreme Court found were not objected to in a timely fashion, raising the issue of a possible procedural default. Since the petitioner's other claims were not exhausted, the petitioner's complaint presents the court with a possible mixed petition. To the extent that the complaint asserts mixed exhausted and unexhausted claims, the petitioner has not raised any arguments addressing cause and prejudice, see Burks v. Dubois, 55 F.3d 712, 716-717 (1st Cir. 1995), nor has he indicated a desire to have the court proceed to review potentially procedurally defaulted claims and risk losing federal review of other claims, see Watkins v. Ponte, 987 F.2d 27, 30 (1st Cir. 1993). In these circumstances, the court dismisses the entire petition. The court therefore need not reach the remainder of the respondent's arguments.

<u>Conclusion</u>

For the reasons discussed above, the petitioner's request for a writ of habeas corpus is dismissed (document no. 1).

SO ORDERED.

                                        _____
                                        Joseph A. DiClerico, Jr.
                                        District Judge

November 23, 1998

cc:  Mark Sisti, Esquire
     Mark Attorri, Esquire

12