Hillsborough
No. 79-329

THE STATE OF NEW HAMPSHIRE

v.

AUGUSTUS HEALD

May 5, 1980

*Thomas D. Rath,* attorney general (*Peter W. Mosseau,* attorney, orally), for the State.

*Bruce E. Kenna,* of Manchester, by brief and orally, for the defendant.

DOUGLAS, J.   The primary issue in this case is whether the trial court impermissibly allowed into evidence certain out-of-court identifications of a criminal defendant based on an array of photographs.

Shortly before midnight on April 14, 1978, John Reid stood waiting for his wife in front of the lobby entrance of the American Inn in Nashua. While waiting, Mr. Reid noticed a small car containing two men parked near the entrance. He later testified that he noticed the car and its occupants because the driver kept revving the engine and the passenger door was ajar. After a few minutes, Mr. Reid's wife arrived. As he loaded his luggage into the car he saw the passenger in the small car enter the lobby.

At approximately the time Mr. Reid left the American Inn, a man entered the lobby, pointed a pistol at the desk clerk, Lewretta Coleman, and told her to put money in a vinyl bag. As she complied with the robber's demand, David VonDette, who was coming on duty to relieve Mrs. Coleman, entered the lobby. Turning his pistol on Mr. VonDette, the robber ordered him to put his wallet in the bag. At this point, Neil Watson, who had been drinking in the pub that adjoins the lobby, approached the desk. The robber told him to put his wallet in the bag. When Mr. Watson refused, the robber threatened to shoot him, knocked him down and kicked him. He then pointed his gun at Mr. Watson and clicked it twice. All of this was in the presence of Mrs. Coleman and Mr. VonDette. The commotion in the lobby attracted the attention of some of the patrons in the bar. Pointing his gun first at these patrons and then at the desk clerks, the robber fled the building.

In September 1978, a Hillsborough County Grand Jury indicted the defendant, Augustus Heald, for robbery, RSA 636:1, and felonious use of a firearm, RSA 650-A:1 (Supp. 1979). A jury convicted the defendant of both offenses. Pursuant to this State's extended term of imprisonment statute, RSA 651:6, the Trial Court (*Goode*, J.) imposed two consecutive sentences of not less than ten or more than thirty years imprisonment. Prior to trial the defendant moved to suppress out-of-court and in-court identifications by three witnesses. After the verdict he moved for a new trial and he later moved for reconsideration of sentence. The defendant excepted to denial of these motions and the court reserved and transferred all questions of law.

The defendant argues generally that the out-of-court identifications should have been excluded because they were the product of unnecessarily suggestive photographic lineups. Specifically, it is alleged that the defendant's picture was the only one that clearly showed both a full face view and a profile. The defendant further contends that his picture showed him to be considerably older than any of the other subjects in the array.

We reject the defendant's first criticism of the array. Three of the photos, including the defendant's, showed both a full face view and a profile. Further, the presence or absence of a side view could not suggest to anyone that a specific subject committed the crime. As to the second point, we agree that though all the photos depicted men with mustaches and reasonably long hair, only the

defendant's picture showed a man apparently in his forties. This fact, coupled with the desk clerks' pre-identification estimates of the robber's age as forty to forty-five, leads us to conclude that the array might arguably have been unnecessarily suggestive. We cannot say as a matter of law that it was not. Even assuming that this array was unnecessarily suggestive, exclusion of the testimony in question is not required. *See State v. Gullick*, 120 N.H. 99, 411 A.2d 1113 (1980).

■ We are concerned here with the reliability of out-of-court identifications made before formal charges are brought. *State v. Leclair*, 118 N.H. 214, 385 A.2d 831 (1978); *see Manson v. Braithwaite*, 432 U.S. 98 (1977). When it appears that the police have employed unnecessarily suggestive procedures to obtain an identification, we apply a totality-of-the-circumstances test to the facts of the case to determine its reliability. *State v. Leclair supra*. In so doing, we weigh the corrupting effect of the suggestiveness against the factors set out in *Neil v. Biggers*, 409 U.S. 188 (1972): opportunity to view, degree of attention, accuracy of description, level of certainty, and time between crime and identification. *Id.* at 219, 385 A.2d at 834. A review of the evidence, and consideration of the *Biggers* factors, clearly and convincingly establish that the trial court was correct in finding that there was no substantial likelihood that Messrs. Reid and VonDette and Mrs. Coleman irreparably misidentified the defendant.

The robber wore no mask and was in full view of both desk clerks for most of the time he was in the lobby. Mr. Reid testified that he viewed the person he saw in the car outside the hotel for several minutes and had eye contact with him. All three witnesses, therefore, had sufficient opportunity to view.

Nor was there a lack of attentiveness on the part of any of the three witnesses. Mrs. Coleman testified that she "couldn't take [her] eyes off of his [the robber's] face or his eyes . . . ." Mr. VonDette's testimony clearly indicates that he watched the robber closely during the fray involving Mr. Watson. There was evidence that the revving engine attracted Mr. Reid's attention to the car's occupants, that he was "tense" about their possible motives, and that the passenger was "the central object" of his attention.

Mrs. Coleman described the robber as over six feet three inches tall, over two hundred pounds in weight, and of stocky build. She stated that the hair was medium brown, stringy and oily-looking, and that the robber had a ruddy complexion, medium hairline,

almond-shaped eyes, straight eyelashes, an angry jaw line and "probably even" teeth. Mr. VonDette described the robber as a large man who wore a leather coat and who had light brown to light blond hair, a mustache, big hands, and who weighed over two hundred pounds. Both clerks put the robber's age at between forty and forty-five. There was evidence that Mr. Reid thought the person he saw was in his late thirties, was wearing a shiny leather coat, was over two hundred pounds, was between six feet and six feet three inches tall, and had long hair. All these descriptions, though they vary in amount of detail, substantially agree with the arresting officer's description of the defendant at the time of arrest. In our opinion, the descriptions in question were sufficiently accurate. *See Neil v. Biggers, supra* at 200.

Degree of certainty of identification poses no problem. Mr. Reid chose the defendant's picture from the array without hesitation. Mr. VonDette chose the defendant's photo immediately. Mrs. Coleman narrowed the pictures to two and then selected the defendant's because of his "soft eyes." She said she was sure.

Finally, all three witnesses identified the defendant within two and one-half days of the robbery. Surely memories of the robber's characteristics could have dimmed only imperceptibly during such a short period. *Cf. Neil v. Biggers supra* (seven months elapsed between rape and confrontation). We hold that the trial court did not err in denying the defendant's motion to suppress the out-of-court identifications.

During trial, Messrs. VonDette and Reid and Mrs. Coleman identified the defendant from the stand. The defendant now contends that these identifications were the product of the out-of-court identification procedures and were thus inadmissible. We disagree. The in-court identifications were made with certainty, notwithstanding indications that the defendant's appearance in court was different in some respects from his appearance on the night of the robbery. As the foregoing paragraphs disclose, there was an abundance of evidence from which the trial court could conclude that the in-court identifications were the result of "observations [made] at or near the scene of the crime . . . ."

Following a sentencing hearing, the trial court imposed two ten-to-thirty year sentences, one for each conviction, to be served consecutively. RSA 651:6. In support of these sentences the court found that the defendant had "twice been previously imprisoned in the State of Maine on sentences in excess of one year . . . ." *See*

RSA 651:6 I(c). The court further found that Mr. Heald had "knowingly devoted himself to criminal activity as a major source of livelihood." *See* RSA 651:6 I(a). Either of these findings, if supported by the evidence, was sufficient to permit the court to impose an extended term of imprisonment. RSA 651:6. The defendant asserts that the evidence on which the court relied in making its findings was "legally insufficient." We disagree.

Through James T. Farr of the Maine State Division of Probation and Parole, who testified from a copy of the defendant's case history as compiled by the Maine State Prison, the State put on evidence that Mr. Heald had on seven occasions been sentenced to incarceration for a period greater than one year. Any two of these sentences, if properly proved, met the requirements of RSA 651:6 I(c).

■ The defendant's contention that Mr. Farr could not properly authenticate the case history because he did not have personal knowledge of the accuracy of each entry is without merit. We have no doubt that the case history comes within the regularly kept record's exception to the hearsay rule. *See generally* MCCORMICK, LAW OF EVIDENCE § 306 (2d ed. 1972). As a supervisor of those who actually made entries in the case history, Mr. Farr was competent to testify that the history was kept in the regular course of the Maine State Prison's business. WIGMORE, EVIDENCE § 1530 (Chadbourne rev. 1972). In this case, the utility of producing on the stand all those who might have contributed to the document in question was far outweighed by practical inconvenience. *Id.*

The defendant next argues that the court could not consider the case history evidence relating to prior sentences because at the hearing the defendant raised the question whether he had been represented by counsel in the trials that led to his convictions. *See State v. Gosselin*, 117 N.H. 115, 370 A.2d 264 (1977). It is enough to note that at sentencing the defendant challenged only one of the seven convictions on this ground. The trial court was free to use any two of the remaining six as a basis for extending the sentence. RSA 651:6 I(c).

Because we hold that the court could find that the defendant had twice previously been imprisoned on sentences in excess of one year, we do not reach arguments concerning the court's finding that the defendant had depended on crime as a major source of livelihood. RSA 651:6 I(a).

■ The defendant's final argument is that the sentences imposed were disproportionate to the gravity of the offenses. U.S. CONST. amend VIII; N.H. CONST. pt. 1, art. 18. We reject this argument. First, the defendant's thirty-year criminal record was exposed at the sentencing hearing. Second, his inclination toward violent crime was amply demonstrated by the evidence at trial. Third, the legislature has determined that defendants who have demonstrated over a long period that they are a threat to society may be given extended sentences. RSA 651:6. We will not disturb that determination. *State v. Farrow*, 118 N.H. 296, 386 A.2d 808 (1978).

*Affirmed.*

All concurred.