Hillsborough
No. 79-197

### The State of New Hampshire

v.

### Freddy Jose Gonzales

December 17, 1980

*Gregory H. Smith*, acting attorney general (*Paul W. Hodes*, attorney, orally), for the State.

*Kelliher, Clougherty & Dalpra*, of Manchester (*Thomas W. Kelliher* orally), for the defendant.

BROCK, J. This is an appeal from the defendant's conviction by a jury on two counts of aggravated felonious sexual assault (RSA 632-A:2 (Supp. 1979)) and two counts of class B kidnapping (RSA 633:1). Prior to the trial, the defendant filed a motion to suppress any in-court identification of the defendant by the two victims on the ground that the out-of-court identification procedure employed by the police was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. *See Manson v. Brathwaite*, 432 U.S. 98, 116 (1977); *State v. Leclair*, 118 N.H. 214, 218–19, 385 A.2d 831, 833 (1978). The Superior Court (*Souter*, J.) granted the defendant's motion as to one victim but denied it as to the other. On this appeal, the only issue before us is the reliability of the out-of-court identification. We affirm.

On the night of October 25, 1978, two teen-age girls entered their van, which was parked at Bradlee's parking lot in Manchester, and proceeded to drive away. As they pulled out of the parking lot a man, who was waiting in the back of the van, stepped forward and told the girls "Don't turn around." The girl driving the van, whose identification of the defendant is the subject of this appeal, did, however, turn around when the man spoke. During the next twenty to twenty-five minutes, the man directed the girl where to drive. While she was being directed where to drive, she turned around and looked at the man "a lot of different times" while making lane changes and talking to the man, who was seated only a foot-and-a-half to two feet from her. Although it was dark at that hour, the interior of the van, which had windows all around it, was lighted from street lights. While the van was on Elm Street, the main street in Manchester, the lighting was particularly good. The man made some effort to mask himself by pulling his sweater over his head in such fashion as to cover his hair but not his face; as a result the man's face was exposed for ninety percent of the time and enough of his hair was visible in order for the driver to determine that it was "fuzzy" hair.

Finally, after driving around for some twenty minutes, the driver was directed to stop at a remote location. For the next forty-five minutes to an hour, the van remained at that location, during which time both girls were sexually assaulted by the man who commandeered their van. While the van was parked at that location, the driver had other occasions to view the man's face. After the assaults took place, the man tied up the girls, removed them from the van, took the van and left the girls at that location.

The next day, less than twenty-four hours after the assault, the

girl who was driving the van went to the Manchester police station and reported the incident. She initially described her assailant as being a black or Puerto Rican male with a light complexion, about seventeen years old, thin build and dark hair.

Later that day, October 26, 1978, a police officer handed this victim a stack of photographs, seventeen in all, and asked her if she could identify any of them as being her assailant. She examined the photographs one at a time by flipping them over in a stack. When she reached the fifth photograph, a profile shot, she indicated that it looked like the man but continued examining the photographs. When she came to the twelfth photograph, a full-face shot, she stopped without hesitation and identified it as a picture of her assailant. Both photographs, numbers five and twelve, were of the defendant, Freddy Gonzales. Only the defendant appeared twice in the photographic array, and he was the only one that appeared in a profile shot.

Three weeks later, on November 17, 1978, the police conducted a corporeal line-up consisting of six persons, one of whom was the defendant. Except for the defendant, none of the individuals who appeared in the corporeal lineup had appeared in the photographic array. Both the assistant county attorney and counsel for the defendant were present at the line-up. At the line-up, the victim picked out the defendant as her assailant. The defendant then filed a motion to suppress any in-court identification of him by this victim.

After hearing all the evidence concerning the pretrial identification procedures, the court found that the identification procedures were not unduly suggestive. On this appeal, the defendant claims that the procedures employed were unduly suggestive and that therefore the "totality of the circumstances" test, *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972), should be applied, *see State v. Gullick*, 120 N.H. 99, 101–02, 411 A.2d 1113, 1114–15 (1980), and that the result would mandate a finding that the procedures resulted in an unreliable identification.

A review of the record in this case, however, establishes that the trial court not only found that the identification procedures were not unduly suggestive, but also went on to apply the *Neil v. Biggers* standards.

The trial court, in making its ruling, stated:

> " 'The prosecutrix' *had . . . a good opportunity to make an observation.* She was close, she was in a lighted area, and she looked at the face in question apparently several

times. There's *no evidence that her attention was so distracted* that she was not able to, in effect, focus on what she was looking at. *Her description . . . was a substantially very accurate description. The identification* which she made on each occasion *was a definite one, a clear one*; and the time taken between the observation of her assailant and the first identification which she made was *less than twenty-four hours. . . .*"

(Emphasis added.)

It should be obvious to all that the trial court, in making these findings, was in fact applying the five-point guideline established in *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972), that is used to determine the reliability of an identification when suggestive procedures have been used. *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). Therefore, if we assume *arguendo* that the identification procedures were suggestive, the trial court has already applied the *Neil v. Biggers* standards: opportunity to view, degree of attention, accuracy of description, level of certainty, and time between crime and identification. For this reason, the defendant's claim that the *Neil v. Biggers* standards should have been applied is meritless because those standards have been applied.

Our review of the record shows that there was clear and convincing evidence that established the reliability of the victim's identification under the *Neil v. Biggers* standard. *See State v. Heald*, 120 N.H. 319, 322, 414 A.2d 1288, 1290 (1980). The victim, on the night of the assault, was with her assailant for over sixty-five minutes and she had numerous occasions to view him as he was located approximately two feet away from her. It is also apparent from the record that the victim availed herself of every possible opportunity to view the assailant and there is every indication that she was attentive in her efforts to view him. The court found the lighting to be good during the time that the assailant was in her presence. Her initial description of her assailant was an accurate one, and each time she subsequently identified the defendant she did so with certainty. Finally, the time between the crime and her first identification of the defendant was less than twenty-four hours. We therefore uphold the trial court's denial of the defendant's motion to suppress. *See State v. Heald supra.*

*Affirmed.*

All concurred.