Cheshire
No. 82-136

# THE STATE OF NEW HAMPSHIRE

v.

# DOUGLAS ALLARD

March 28, 1983

*Gregory H. Smith,* attorney general (*Deborah J. Cooper,* deputy attorney general, on the brief, and *Andrew Isaac,* attorney, orally), for the State.

*Cristiano, Kromphold, Green, McMahon & Heed,* of Keene (*Peter W. Heed* on the brief and orally), for the defendant.

BATCHELDER, J.   Two questions are presented in this appeal from

convictions of aggravated felonious sexual assault and first-degree assault: (1) whether a pre-arrest photographic lineup deprived the defendant of his due process rights because it was unnecessarily suggestive under the totality of the circumstances; and (2) whether a statement by the Trial Judge (*Contas*, J.) in his jury instructions diminished the State's burden of proof in the minds of the jurors. For the reasons which follow, we affirm.

The victim in this case, a twenty-year-old female, was hitchhiking between Keene and Peterborough on October 28, 1980, at approximately 2:00 a.m., and accepted a ride from a white male who told her his name was Doug and that he worked at American Advertising Company. She later identified the man as the defendant. The defendant allegedly drove with the victim to the town of Dublin where he stopped the car and made advances toward the victim, who resisted. When she resisted his advances and got out of the car, the defendant struck the victim on the face with his closed fist with sufficient force to fracture her jaw. The defendant forced the victim back into the car and drove to a second location where he forcibly disrobed and raped her. The defendant then drove to another location where he repeatedly raped the victim in the backseat of the vehicle. Finally, the victim escaped, and at approximately 4:00 a.m. she reached a private residence in Dublin where she appeared to be in pain and was bruised and bloody; her face was swollen and she could speak only with difficulty.

During initial questioning by the police, the victim described her assailant as being "approximately six foot one, twenty-five to thirty years of age and large shoulders, and [having] light brown curly hair, shoulder length, and also a moustache which was untrimmed." Efforts to construct a composite sketch of her assailant at that time were unsuccessful.

The victim's information led the police to American Advertising Company where they met Robert Boyle, an employee at American who told them that his friend, Doug Allard, was similar in appearance to the man they had described, but that Allard did not have a mustache and did not work for American Advertising. On October 30, 1980, acting on this information, the Dublin police chief and New Hampshire State Police Trooper Michael Miles arrived at the Allard residence, where Boyle was also present, and spoke with the defendant. The police took color photographs of both Allard and Boyle, with their permission. The color photos of Allard and Boyle were placed on the last pages in a photograph album containing facial photographs of an assortment of men. The photographs of the defendant and Boyle were the only color photographs in the album.

On the evening of October 30, the Dublin police chief and Trooper Miles visited the victim and showed her the book of photographs. At the suppression hearing, Trooper Miles testified that when the victim was handed the book, she was told that there were pictures in the book for her to look at, to go through them at her own pace, and to take her time. He also stated that as she examined the book, she "kept going back to the page that had the picture of Douglas Allard on it and kept looking at that particular picture." The trooper testified that "she felt . . . that [the defendant] was the subject that had assaulted her, but she couldn't be positive because of the quality of the picture." The following day, she repeated the same procedure, going "back to the picture of Mr. Allard," but again without making a positive identification. About this time, the police attempted to prepare a composite sketch, but again failed.

Subsequently, Trooper Miles located a 1977 police black and white photograph of the defendant from the Keene Police Department and a second photographic lineup was created consisting of that photograph and seven other black and white photos. This second photographic lineup was shown to the victim on November 5. At this time, she picked out the defendant as the man who assaulted her. In identifying the defendant, she volunteered the following to the officer, "I would swear on my grandmother's grave that that was the man who assaulted me." As a result of this photographic lineup, the defendant was indicted for aggravated felonious sexual assault, RSA 632-A:2 (Supp. 1981), and first-degree assault, RSA 631:1 (Supp. 1981).

Prior to his trial, the defendant filed a motion to suppress both the out-of-court identification and any future in-court identification arguing that the police procedures were unnecessarily suggestive because the defendant was the only person common to both photographic arrays and because the color photographs of the defendant and Boyle were placed in the last pages of a photo album consisting primarily of black-and-white snapshots. The trial court denied the motion, and during the trial the victim testified and identified the defendant as the assailant. The jury found the defendant guilty of both offenses charged. The defendant appeals both the denial of the motion to suppress and the trial judge's instruction on burden of proof.

■■ The integrity of a courtroom identification is dependent upon the out-of-court identification: if the out-of-court identification is unreliable under the totality-of-the-circumstances test, then the State must show that the in-court identification has an independent source which is not influenced by the previous improper out-of-court

viewing. *State v. Preston,* 122 N.H. 153, 157–58, 442 A.2d 991, 994 (1982); *State v. Leclair,* 118 N.H. 214, 220–21, 385 A.2d 831, 834–35 (1978). Consequently, our inquiry in this case is whether the out-of-court identifications are the result of such improper police procedures that the in-court identification and other evidence derived from them are inadmissible.

■■ The defendant, in the first instance, has the burden of showing that the police identification procedure was unnecessarily suggestive. *State v. Ober,* 116 N.H. 381, 383, 359 A.2d 624, 626 (1976); R. McNAMARA, 1 NEW HAMPSHIRE PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 230, at 144 (1980). Once the police procedures are shown to be unnecessarily suggestive, the State must prove that the identification was nonetheless reliable by clear and convincing evidence. *State v. Leclair,* 118 N.H. at 219–20, 385 A.2d at 834; *see* R. McNAMARA, 1 NEW HAMPSHIRE PRACTICE, *supra* § 230, at 144 (1980). There is no need to consider the reliability issue unless the police procedures have been shown to be unnecessarily suggestive. *State v. Gullick,* 120 N.H. 99, 101–02, 411 A.2d 1113, 1115 (1980). In this case, the court implicitly concluded that the police procedures were unnecessarily suggestive because it proceeded to consider the reliability issue, applying the criteria set forth in *Neil v. Biggers,* 409 U.S. 188, 199–200 (1972).

■ To determine whether an out-of-court identification is reliable, notwithstanding unnecessarily suggestive police procedures, the courts employ the totality-of-the-circumstances test by which the prejudicial effect of the suggestive identification is balanced against five reliability factors. *Id.* The five factors contributing to reliability of the identification under the totality-of-the-circumstances test are: (1) the opportunity to view the criminal; (2) the witness' degree of attention; (3) the accuracy of any prior description given by the witness; (4) the witness' level of certainty; and (5) the lapse of time between the crime and the confrontation. *Id.; see also State v. Perron,* 122 N.H. 941, 948, 454 A.2d 422, 425 (1982). This test is the functional equivalent of the test used to determine whether an in-court identification is admissible because it had an independent origin. *State v. Preston,* 122 N.H. at 158, 442 A.2d at 995.

Although we are not persuaded that the out-of-court identification procedures were unnecessarily suggestive, because the trial judge applied the *Biggers* criteria we will assume that he found the police procedures to have been unnecessarily suggestive. Application of the *Biggers* test clearly supports the trial court's finding that the victim's out-of-court and in-court identifications were admissible. First, the victim's opportunity to view the defendant was considera-

ble: she was in the defendant's presence for a protracted period of time, during which she was repeatedly assaulted. Although the quality of lighting was uncertain during the early morning hours when the victim was assaulted and raped, there was illumination from street lights. The trial court could reasonably have concluded that the victim's degree of attention was great because of her close contact with the defendant. The inconsistency between the defendant's appearance and the victim's description of him was limited to the absence of a mustache and a discrepancy in hair length. The lapse of time between the crime and the first out-of-court identification was only two days, and the second photographic identification was eight days after the assault. Finally, the high degree of certainty with which the victim identified the defendant after the second photographic showing was reflected in her statement, "I would swear on my grandmother's grave that that was the man who assaulted me."

■ We hold that the trial court, by weighing the five reliability factors discussed above against the arguably unnecessarily suggestive identification procedures, could reasonably have concluded that the out-of-court identification was reliable by clear and convincing evidence and therefore admissible. Accordingly, it is unnecessary to discuss whether the in-court identification was independent of an inadmissible out-of-court identification. *See State v. Preston*, 122 N.H. at 157–58, 442 A.2d at 994.

■ The defendant's next argument involves the issue whether the reasonable doubt language of the model burden-of-proof instruction contained in *State v. Wentworth*, 118 N.H. 832, 838–39, 395 A.2d 858, 862–63 (1978), was vitiated by the court's following statement:

"It is of utmost importance that no person who is guilty should go free, and, likewise, it is equally important that no person who is innocent should be convicted."

In determining whether an instruction violates the *Wentworth* paradigm, "[w]e must evaluate the effect of the disputed charge in the context of the overall instruction. . . ." *State v. Langdon*, 121 N.H. 1065, 1068, 438 A.2d 299, 301 (1981).

■ The criticized language occurred at the beginning of a jury instruction which covers twenty-six pages of transcript. The *Wentworth* instruction, however, was given properly, including the instructions relating to burden of proof and presumption of innocence. In concluding his charge, the court instructed the jurors that if they were all satisfied beyond a reasonable doubt that the defend-

ant engaged in conduct comprising the elements of the offense, they should find him guilty. The trial judge then added, "[h]owever, if you are not so satisfied as to each of the elements of this offense beyond a reasonable doubt, then you must find the defendant not guilty." Similar language was used with respect to each offense and was repeated in substance on two other occasions in the instructions. We are satisfied that "any possible prejudicial effect of the phrase was harmlessly lost in the totality of the instruction," and any possible error was harmless beyond a reasonable doubt. *State v. Black*, 116 N.H. 836, 837–38, 368 A.2d 1177, 1179 (1976).

*Affirmed.*

All concurred.