Cheshire
No. 86-223

THE STATE OF NEW HAMPSHIRE

v.

JOSEPH MACDONALD

October 9, 1987

*Stephen E. Merrill,* attorney general (*Andrew W. Serell,* attorney, on the brief), by brief for the State.

*James E. Duggan,* appellate defender, of Concord, by brief for the defendant.

PER CURIAM. In this appeal from convictions for armed robbery and kidnapping, the defendant argues that the Superior Court (*Thayer,* J.) erred in denying motions to suppress Douglas Thompson's out-of-court identification of the defendant as the perpetrator and John Libby's in-court and out-of-court identifications of the defendant as a guest at the hotel where the robbery occurred. We affirm.

The evidence warranted findings that when Libby was working as a desk clerk at the Winding Brook Lodge in Keene on March 14, 1985, he assigned a room to a man whom he checked in again on March 21, on which occasion Libby assigned room 111 to him. Libby saw the same man for a period of about four minutes when the man returned to the front desk later that day to buy cookies, and about 1:00 a.m. the following morning Libby dealt with him yet again, to extend his registration for a further night.

On the evening of March 22, Thompson was working at the motel desk when the occupant of room 111 approached him to ask for a 5:00 a.m. wake-up call and to enquire what time breakfast would be available. When Thompson made the call the next morning, the man in room 111 asked whether there were cookies for sale in the lobby. Thompson said yes, and a half hour later the man approached Thompson to purchase two bags of cookies. When Thompson asked for payment the man pointed a gun at him and said "Now I am sure you know what this is." Thompson recognized the gunman's voice as the voice of the person he had spoken with when he had called room 111. He made a mental note to look carefully at the man's face, in order to give a good description later, and was able to view the man for about four minutes.

The gunman directed Thompson into the adjoining, lighted office, where they were joined by the gunman's confederate. The two robbers bound Thompson's wrists and ankles with handcuffs and instructed him to lie face down. After gagging Thompson, they left with such money as they could find.

Thompson later described the gunman as in his late 40's, about five foot seven, medium build, with short, slightly receding and graying hair, but no facial hair, and wearing gold-rimmed glasses. With Thompson's help, the police prepared a composite sketch of the robber. The police also obtained a description of the occupant of room 111 from Libby, who described him as having a medium build, and being five foot eight or nine with light brown hair.

After the defendant had been charged with another robbery, the Keene police obtained his picture, which they included in an array of twenty photographs. About three weeks after the incident in question, Thompson examined the array and "clearly recognized [the defendant's photograph] as being a photograph of the man who held me up." A week later the police showed Libby an array of sixteen photos, all of them previously shown to Thompson, but with a different photograph of the defendant, this one showing him without glasses. Libby put the defendant's picture aside when he came to it, and after completing the set pointed to that one and said, "That's the person" who was registered as the occupant of room 111.

Prior to trial the defendant moved to suppress any out-of-court and in-court identifications as tainted by unnecessarily suggestive photo arrays. He pointed out that fifteen of the original twenty photographs showed men with mustaches, that three of the clean-shaven subjects were younger than Thompson had thought the robber to be, and that one other appeared to be bald. He also asserted that it was significant that the defendant was pictured with glasses in the array given to Thompson, who had described the robber as wearing glasses, but was pictured without them in the array presented to Libby, who had said nothing about glasses in his description.

The trial judge viewed the arrays as reassembled for the suppression hearing. He found that the array shown to Thompson was not unnecessarily suggestive, but that the smaller group shown to Libby was, although he did not express his reasons for so finding. He denied the motion to suppress identifications, however, after finding by clear and convincing evidence that Libby's selection of the defendant's photograph rested on grounds independent of any suggestiveness, and after noting that he would have reached the same conclusion about Thompson's identification if there had been any undue suggestiveness in the array shown to him. At trial, the State introduced evidence of both Thompson's and Libby's out-of-court identifications, although only Libby gave an in-court identification of the defendant, who by then had grown a mustache.

■ In arguing on appeal that all identifications should have been suppressed, the defendant invokes no State constitutional provision, and raises no State issue. *See State v. Dellorfano,* 128 N.H. 628, 632, 517 A.2d 1163, 1166 (1986). The case is therefore governed by federal standards. We have recently given the following summary of the federal rules for challenging out-of-court identifications following unnecessary police suggestiveness:

> "When a defendant challenges the admissibility of identifications based on photo arrays, he has the initial burden to show that the police identification procedures were unnecessarily suggestive. *See State v. Allard,* 123 N.H. 209, 213, 459 A.2d 259, 262, *cert. denied,* 464 U.S. 933 (1983). 'Once the police procedures are shown to be unnecessarily suggestive, the State must prove that the identification was nonetheless reliable by clear and convincing evidence.' *Id.*"

*State v. Howe,* 129 N.H. 120, 123, 523 A.2d 94, 96 (1987) (further citation omitted). *But compare Neil v. Biggers,* 409 U.S. 188 (1972) (where admissibility of out-of-court identification is challenged on grounds of undue police suggestiveness, government's burden of proof not specified), *with United States v. Wade,* 388 U.S. 218, 239–40 (1966) (following sixth amendment line-up violation, reliability of in-court identification must be shown by clear and convincing evidence) *and State v. LeClair,* 118 N.H. 214, 219, 385 A.2d 831, 834 (1979) (following undue police suggestiveness, out-of-court identification inadmissible without proof of independent basis by clear and convincing evidence as "[a] matter of State law;" same burden as to in-court identification, *id.* at 221, 385 A.2d at 835).

Because the trial court found by clear and convincing evidence that Libby's out-of-court identification was independent of the undue suggestiveness of the photo array and, for like reasons, would have found Thompson's identification admissible if there had been undue suggestiveness in the array shown to him, judicial economy will be served by determining whether the court could have found such an independent basis in each instance by clear and convincing evidence. We are satisfied that those findings were warranted, and the identifications were therefore admissible.

■ The existence of an independent basis must be judged on the totality of the circumstances, with particular reference to the five factors listed in *Neil v. Biggers, supra* at 199–200; *State v. Howe, supra* at 123, 523 A.2d at 96: (1) the witness's opportunity to view the defendant at the time of the crime; (2) the degree of the

witness's attention; (3) the accuracy of the prior description given by the witness; (4) the witness's level of certainty; and (5) the length of time between the crime and the photo identification.

██ Taking Thompson's identification first, we note that he had two separate opportunities to observe the robber at close range in the lighted motel desk area—once the night before the robbery, and again for about four minutes during the robbery before he was forced to lie down. In each instance he was able to focus his attention on the man, and during the robbery he did so for the conscious purpose of making a later identification. He described the robber to the police after the crime; and the trial judge, with an opportunity to view the defendant, found no discrepancy between the description and the defendant's appearance. Thompson helped the police prepare a composite drawing, which we have examined and found to have a definite resemblance to the defendant's photograph. When Thompson came upon the defendant's photograph in the array three weeks after the robbery, "it jumped [at him] that this was the man in question." He had "absolutely" no doubt. There is no question that this evidence was adequate to support the court's finding that the out-of-court identification rested on a basis independent of any suggestiveness. This conclusion is not affected by Thompson's inability to identify the defendant at the time of trial, for by then a year had passed and the defendant had grown a mustache.

Turning to Libby's out-of-court identification, we note first that he saw the man registered in room 111 four separate times in the motel's desk area, and spent four minutes with him when the man registered for the second time. There is no indication that Libby was distracted on any of these occasions, and while his concentration may not have been intense, the repeated instances would naturally have confirmed and strengthened his observations of the man in question. The trial judge found that Libby's description, like Thompson's, was consistent with the defendant's appearance; and the composite drawing prepared with his help did, as we have noted, resemble the defendant. When Libby reached the defendant's picture in the array, he recognized it without any difficulty and had no doubt that the defendant was the man who had registered at the motel. The identification came within a month of the last viewing of the motel guest. Once again, there is no question that this evidence was an adequate basis for the court's finding in support of admitting the identification.

The only remaining question goes to the basis for admitting Libby's in-court identification at trial. The standards for so doing are substantially identical to those set out in *Neil v. Biggers*, 409 U.S. 188. *See United States v. Wade*, 388 U.S. at 240. "Having found the out-of-court identification reliable, we need not determine whether an independent source existed for the in-court identification." *State v. Howe*, 129 N.H. at 125, 523 A.2d at 98.

*Affirmed.*

THAYER, J., did not participate.