Hillsborough
No. 87-081

### THE STATE OF NEW HAMPSHIRE

v.

### RICHARD MANNA

January 29, 1988

*Stephen E. Merrill,* attorney general (*John S. Davis,* attorney, on the brief), by brief for the State.

*James E. Duggan,* appellate defender, of Concord, by brief for the defendant.

JOHNSON, J. The defendant appeals his three misdemeanor convictions for operating a motor vehicle after his license to operate had been suspended and his misdemeanor conviction for disobeying

an officer by giving the officer a false name and address while in charge of a vehicle. The defendant contends that the Trial Court (*Dalianis*, J.) erred (1) in consolidating the four charges for a single trial and (2) in failing to suppress a police officer's out-of-court and in-court identifications of the defendant because the officer examined a single police file photograph of the defendant in the course of his investigation of the case. Finding no error, we affirm.

The four offenses charged arose out of three separate incidents. The first occurred on November 24, 1985, when Nashua police officer Neal Casale saw a car go by with an expired inspection sticker. The officer stopped the vehicle, which had a male and female seated inside, and asked the driver his name and address. The driver responded that his name was Michael H. Manna and that he lived at 4 Jo Ellen Drive in Merrimack and did not have a New Hampshire license in his possession. The officer radioed for a license check from his police cruiser, which revealed that Michael H. Manna did not have a New Hampshire driver's license. The officer then gave the driver a summons for operating without a license and the passenger, who owned the vehicle, a summons for the use of an uninspected vehicle.

Just before Christmas, in 1985, a man who identified himself as Michael Manna left a telephone message for Officer Casale, who returned the call. Michael Manna stated that he had been sent a notice from the Nashua District Court for failure to appear to respond to a summons; but he claimed he had never received a summons from Officer Casale and that he had not committed the alleged offense on November 24, 1985.

A meeting between the two men was arranged on December 27, 1985. When they met, Officer Casale immediately recognized that Michael Manna, the person with whom he was meeting, was not the same person he had arrested on November 24, 1985. Michael Manna told Officer Casale that he believed his brother Richard was the driver, since Richard had in the past held himself out to the police to be Michael Manna when he had been stopped for operating a vehicle while his license was suspended.

Officer Casale then requested a license check for Richard Manna and found that Richard's license to operate had also been suspended. Hence, if Richard had, in fact, been the driver on November 24, 1985, he would have been operating a motor vehicle after suspension. Officer Casale then located a 1984 photograph of the defendant from the Nashua police files and recognized the person in the photograph to be the defendant, Richard Manna. The

defendant was then charged with driving after suspension and with disobeying a police officer by giving a false name and address.

The next incident involving the defendant occurred on January 30, 1986. Nashua police officer Jamie Provencher stopped a vehicle because of erratic operation at 2:48 a.m. The vehicle was being operated by a male, with a female passenger. On this occasion the defendant gave his real name and date of birth. The officer checked the status of the defendant's license and learned that his license to operate had been suspended. The defendant was subsequently arrested and charged with driving after suspension.

The third incident involving the defendant occurred on March 4, 1986, when Nashua police officer Thomas Ravanelle, who was operating a radar post, noted a man whose head "almost hit the ceiling of the car" because of his height, with a passenger, driving a speeding vehicle. The officer followed the car until it stopped at a parking lot, whereupon the heads of both parties disappeared. The officer could, however, see what he thought were "parts of bodies coming up over the seat a few inches." When the officer approached the car, the defendant, who the officer estimated to be "six foot five," was in the passenger's seat. His wife, Maureen, who the officer estimated to be "four feet ten inches tall," was in the driver's seat. The officer concluded that the parties had changed seats. He asked the defendant his name and date of birth because he believed the tall male was the operator "when [he] had clocked [the car] on radar." Once again, a license check revealed that the defendant's license had been suspended, and he was charged with driving after suspension.

The defendant moved to sever the three driving-after-suspension cases. The motion was denied, and the four misdemeanor cases were tried together. The defendant's motion to suppress the identification by Officer Casale was also denied.

██ The defendant first claims that the trial court abused its discretion in refusing to sever the cases. This court's applicable standard of review is that "the resolution of consolidation questions lies within the sound discretion of the trial court and . . . in the absence of a showing of an abuse of this discretion, its ruling will not be disturbed on appeal." *State v. Cote*, 129 N.H. 358, 367, 530 A.2d 775, 779–80 (1987) (permitting consolidation of a felony and seven misdemeanor sexual assault charges for offenses occurring on two separate days in two different towns). In deciding whether there has been an abuse of discretion, the vital question is "whether the defendant's right to a fair trial was jeopardized by non-severance." *State v. Winders*, 127 N.H. 471, 473, 503 A.2d 798, 799

(1985). The facts of this case are not unlike those in *State v. Cote*, where we held that severance was not required where the evidence in support of each offense was brief, simple and unlikely to confuse a jury and easily referable to each crime.

The jury could easily examine and weigh the evidence in each case without risk of confusion since the charges arose out of three distinct incidents, each involving a particular date and a particular officer. The State's evidence consisted of the direct testimony of the three officers involved and of the defendant's brother. The State also introduced the defendant's photograph and two documents.

■ The defendant argues that charges should be consolidated for trial only when they are "related or apparently part of a common scheme or plan." *State v. Freije*, 109 N.H. 290, 291, 249 A.2d 683, 684 (1969). He contends that the charges here are unrelated and are not part of a common scheme or plan. The defendant's argument fails because cases in which the charges are related or apparently part of a common scheme are simply instances when it would be apparent that consolidation of cases would be desirable. *See Id.* at 291, 249 A.2d at 684. In *State v. Whitney*, 125 N.H. 636, 639, 484 A.2d 1158, 1160 (1984), we held that, "[t]he decision to join or sever cases for trial is within the discretion of the trial court. The trial court's ruling will be upheld unless it is shown that the defendant's right to a fair trial was jeopardized." (Citations omitted.) This test determines if consolidation is proper; the test is not that the several crimes are related or part of a common scheme or plan.

■ In this case, it should be noted, the trial court was careful to caution the jury to consider each offense separately. *State v. Cote*, 129 N.H. at 368, 530 A.2d at 780. These cautionary statements are significant, since juries are presumed to follow the instructions of the trial court. *State v. Chickering*, 97 N.H. 368, 370 , 89 A.2d 206, 207 (1952).

■ The defendant next argues that consolidation made it impossible for him to testify as to the incident involving his wife without being required to testify as to the other charges. This contention fails because the defendant did not make "a convincing showing that he ha[d] both important testimony to give concerning one count and strong need to refrain from testifying on the other[s]." *Baker v. United States*, 401 F.2d 958, 977 (D.C. Cir. 1968). We find no prejudice to the defendant, where his testimony would have been cumulative to his wife's alibi testimony that she was the operator of the vehicle. This is particularly the case where the

defendant failed to demonstrate any strong need to refrain from testifying as to the other two driving-after-suspension incidents, in which the State had clear and strong evidence the defendant was the driver of the vehicle after his license had been suspended.

Turning to the suppression issue, the defendant argues that the trial court erred in failing to suppress Officer Casale's out-of-court and in-court identifications of the defendant because of the fact that Casale sought out the single photograph of the defendant when the defendant's brother accurately insisted that he had been improperly charged with the initial offense.

■■ We have held in *State v. Howe*, 129 N.H. 120, 123, 523 A.2d 94, 96 (1987) that "[w]hen a defendant challenges the admissibility of identifications based on photo arrays, he has the initial burden to show that the police identification procedures were unnecessarily suggestive." When the defendant meets this burden, the State must then prove that the identification was reliable by clear and convincing evidence. *Id.*

The use of a single photograph would be highly suggestive in a case where the police were working with a victim or potential untrained lay witness to obtain an identification. *State v. LeClair*, 118 N.H. 214, 219, 385 A.2d 831, 833 (1978). However, in this case Officer Casale was both the investigator and the witness to the November 24, 1985 offense. The officer was faced with the fact that the person charged, Michael Manna, denied being the driver on November 24, 1985, but suggested that his brother had used Michael's name when stopped by the police while operating a motor vehicle on previous occasions.

Michael was not a witness to the November 24, 1985 driving incident and he could not have testified that his brother was the driver on the date in question. The person who could best testify as to the actual driver was Officer Casale, who had made the stop and issued the summons. Given the circumstances, it is unreasonable to hold that Officer Casale should have requested that another police officer prepare a photo array to see if Casale could pick out Richard Manna so as to increase the reliability of his photo identification. Officer Casale, having been given information about Richard's past actions and being the arresting officer, acted as a reasonable officer would under the circumstances and simply obtained a photo of Richard which was at hand in order to verify Michael's story and complete his investigation.

■■ The teaching of the *Howe* case is that the police, when dealing with non-police witnesses, must not be permitted to unduly suggest who has perpetrated a crime, where identification is a key to the State's case. That case and others similar to it are aimed at deterring police misconduct. Here, police misconduct is not at issue. Officer Casale could not be found through the photo identification process to have impermissibly suggested *to himself* the person whom he arrested on November 24, 1985. Accordingly, we hold that the identification procedure under these facts was not unnecessarily suggestive.

■ The defendant also suggests that the State should be made to prove by clear and convincing evidence that it has satisfied the five reliability factors set forth in *State v. LeClair*, 118 N.H. at 219, 385 A.2d at 833. Assuming, *arguendo*, that the identification procedure was unnecessarily suggestive and that the State therefore had to meet the *LeClair* tests, a reasonable jury could have found (1) that Casale had a "good look" at the defendant from "a foot away," and that he was "looking right at" the defendant; (2) that Casale "remembered that stop vividly" because he was "very suspicious of it;" (3) that Casale had "no doubt" about his photographic identification of the defendant; and (4) that the lapse of time from the arrest to his viewing the photograph was slightly more than one month. As to the fifth test, accuracy of prior description, where Casale was both the witness and the investigator, there would be no occasion for Casale in his role as witness to describe the driver of the vehicle on November 24 *to himself* in his role as police investigator.

The defendant cites *Manson v. Brathwaite*, 432 U.S. 98 (1977), which involved a single photo identification by an undercover police officer. However, that case is clearly distinguishable from this case because the suggestive photo identification procedure was employed by a second regular officer, who was also investigating the crime along with the undercover officer who had seen the alleged perpetrator. In *Manson* the Supreme Court upheld the conviction, based on the totality of the circumstances, despite the use of a single photo.

In view of the fact that the procedures for identification under these facts were not unduly suggestive and that the reliability of Officer Casale's out-of-court identification meets the clear and convincing test, the trial court did not need to determine the existence of an independent source for the in-court identification. *Howe*, 129 N.H. at 125, 523 A.2d at 98.

 We hold that the trial court properly refused to suppress Officer Casale's out-of-court and in-court identifications of the defendant.

*Affirmed.*

All concurred.