Rockingham
No. 88-034

THE STATE OF NEW HAMPSHIRE

v.

DANIEL ALLEN

July 9, 1990

*John P. Arnold,* attorney general (*John S. Davis,* assistant attorney general, on the brief and orally), for the State.

*W. Kirk Abbott, Jr.,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

PER CURIAM. The defendant was convicted after a jury trial in Superior Court (*Gray,* J.) on one count of aggravated felonious sexual assault, one count of attempted aggravated sexual assault and one count of second degree assault in violation of RSA 632-A:2, RSA 629:1 and RSA 631:2, respectively, for which he received three consecutive sentences in the State Prison, two for 7½ to 15 years, and one for 3½ to 7 years. On appeal, the defendant alleges that the trial court erred in denying his motion to suppress the victim's in-court identification of him on the basis of two pre-trial comments made by a victim-witness assistant to the victim about the defendant's appearance. We affirm.

It is undisputed that on the morning of August 1, 1986, the victim, a nineteen-year-old woman who was working at a construction site in Deerfield, was physically and sexually assaulted in the basement of the house that was under construction. She passed out during the assault, and upon regaining consciousness, fled to a neighboring house, where she remained in a daze until transported to a hospital by the neighbor and the Deerfield police chief.

After being released from the hospital on August 1, the victim went to the Candia police station where she gave a tape-recorded statement about the attack that morning. She then met with Sergeant Hureau at the Deerfield police station, where she helped create a composite sketch of her assailant. She described her attacker as a "white man [with] pale skin . . . dark brown hair, . . . thick and feathered, unshaved . . . , very wide, long shoulders and arms, very slender . . . . His eyes appeared to be sunken into his head . . . ." At trial, Sergeant Hureau testified that he believed the victim's description of her assailant was "very similar" to the defendant's appearance.

In the months following the attack, the police investigation yielded little. In December of 1986, Chief Harbison of the Deerfield police force went down to Haverhill, Massachusetts, to pick up the defendant and bring him back to New Hampshire on charges unrelated to

the assault on the victim in this case. When the defendant found out that Chief Harbison was from Deerfield, he asked if the Chief "was there to take him back to Deerfield for the rape." On December 16, 1986, Sergeant Hureau interviewed the defendant in New Hampshire. The defendant admitted during this interview that he had been on a job site in Deerfield on August 1, 1986, but he denied committing the assault.

On December 18, 1986, Sergeant Hureau arranged for the victim to view a photo line-up that contained the defendant's picture. The line-up consisted of two photographs of each of eight men (frontal and profile), sixteen photos in all. Hureau testified that the victim appeared nervous and apprehensive about viewing the line-up. After looking at the photographs, the victim told Hureau she could not identify anyone. She later told him that the man who had assaulted her was in the line-up, but that she had been too upset on December 18 and "couldn't bring herself to say" who the assailant was.

On March 23, 1987, after seeing a man in February who reminded her of the man who had attacked her, the victim called Sergeant Hureau and asked to look at the photo line-up again. She viewed the photo array for a second time on March 30, 1987, at which time the line-up consisted of the same sixteen photographs from the first line-up, together with two photos each of eight additional men. Hureau testified that the victim examined the line-up for four or five minutes before she identified the photos of the defendant and said, "It's him." When she was asked whether the suspect looked different when the crime occurred than he did in the photographs, the victim answered that at the time of the assault he did not have a moustache and had "more of a beard or facial growth," and that his hair "looked more greased back" in the photo. She also said that she remembered his Adam's apple. In June, 1987, the defendant was charged with committing the crimes of aggravated felonious sexual assault, attempted aggravated felonious sexual assault and second degree assault.

On October 19, 1987, the victim went to the Rockingham County courthouse to meet with her victim-witness advocate, Kathy Berry. The defendant happened to be in the same courthouse on that day for a bail hearing. The victim testified that she did not see the defendant on October 19. In fact, she testified that she had not seen the defendant either in person or in a photograph since viewing the second line-up on March 30, 1987. Ms. Berry, however, attended the defendant's bail hearing and, according to the victim, told her later that "[h]e was sleazy looking" and that "he fit the description that [the victim] had

given" of the perpetrator. When the victim was questioned about whether she asked Ms. Berry any specific questions, she responded, "No, because I know what he looks like and I don't need to hear it from someone else."

On November 23, 1987, the defendant moved to exclude all testimony by the victim regarding any in-court and out-of-court identifications of the defendant. The sole basis for this motion was that Ms. Berry had acted improperly in commenting to the victim that the defendant was "sleazy looking" and "fit the description" of the assailant that the victim had given to the police. The defendant stated in his motion that Ms. Berry's conduct "fundamentally and irreparably compromises the reliability of [the victim's] identification of Mr. Allen . . . [so as to] violate[ ] the defendant's right to fair trial and due process of law under part I, article 15 of the New Hampshire Constitution; and the Fourteenth Amendment of the United States Constitution." The trial court heard the defendant's motion on November 24, 1987, and denied the motion that same day. By order dated November 30, 1987, the trial court ruled that while Ms. Berry's conduct was "somewhat inappropriate, [it] did not taint any past or future identification since the statement was not made while the defendant was within sight of the victim and the testimony was that the victim at no time on October 19, 1987, saw the defendant at all." During trial on December 2, 1987, the victim identified the defendant as the man who attacked her on August 1, 1986.

While the defendant argued in his motion that testimony concerning both in-court and out-of-court identifications should be excluded at trial, he limits his appeal to the argument that the trial court erred in permitting the victim to make an in-court identification of him. Specifically, the defendant alleges that comments made to the victim by Ms. Berry were "so unnecessarily suggestive so as 'to give rise to a very substantial likelihood of irreparable misidentification.'"

The defendant alleged in his motion that allowing the victim to make an in-court identification of him would violate his rights under both the State and Federal Constitutions. In denying the defendant's motion, the trial court did not indicate whether its decision was based on the State or the Federal Constitution, or on both. On appeal, the defendant again cites both the State and Federal Constitutions in support of his claim. He relies on State and federal cases that interpret only the Federal Constitution, however, in arguing that the in-court identification should not have been permitted; and he does not present any argument or analysis concerning how the State Con-

stitution should be interpreted to provide him with relief. Nonetheless, it is not the policy of this State to require a defendant to develop such a State analysis in order to preserve his State constitutional claim. *See State v. Bradberry*, 129 N.H. 68, 71–72, 522 A.2d 1380, 1381–82 (1986). *But see id.* at 81–83, 522 A.2d at 1387–89 (Souter, J., concurring specially). Thus, the defendant has properly preserved both his State and federal claims of a due process violation, and we will address his State constitutional argument first. *State v. Fowler*, 132 N.H. 540, 545, 567 A.2d 557, 559–60 (1989).

■  The defendant takes the position that in challenging an identification procedure under part I, article 15 of the New Hampshire Constitution, he has the initial burden of establishing that the out-of-court conduct of which he complains was unnecessarily suggestive. *See State v. Humphrey*, 129 N.H. 654, 656, 531 A.2d 329, 331 (1987); *State v. Howe*, 129 N.H. 120, 123, 523 A.2d 94, 96 (1987) (defendant carries burden of proving out-of-court procedure was unnecessarily suggestive in cases where Federal Constitution at issue). Although we have not previously determined what the State Constitution requires, after considering part I, article 15, the parties' briefs and the federal cases in this area, we now hold that the defendant has the burden of proof as described herein under the State Constitution.

In most cases where an in-court identification is challenged, the police have said or done something before or contemporaneously with the victim's positive identification to indicate to the victim that a particular suspect was the perpetrator. *See State v. LeClair*, 118 N.H. 214, 216–17, 385 A.2d 831, 832 (1978); *State v. Butler*, 117 N.H. 888, 890, 379 A.2d 827, 829 (1977). Although the defendant does not challenge the identification made at the police station, he challenges out-of-court conduct by a State employee that he alleges was unnecessarily suggestive and thus renders the subsequent in-court identification unreliable. In this case, however, Ms. Berry did nothing to mark the defendant as the actual assailant. Ms. Berry's comments were made six-and-a-half months after the victim identified the defendant's photo at the police station, and did not tell the victim anything that she did not already know: that the man whose picture the victim picked out fit the description she had given the police. The victim did not see the defendant on October 19, 1987. Thus, when Ms. Berry told the victim that the defendant "was sleazy" and "fit the description," the victim could not have known who Ms. Berry was describing unless she already knew what her assailant looked like.

■ The defendant asserts that the statements made by Ms. Berry were more prejudicial than the statements made in *Howe*, in which a police officer told the victim, "we think that's the guy," immediately after she had identified the defendant as her attacker. *Howe*, 129 N.H. at 122, 523 A.2d at 96. The danger of police officers' making suggestive comments is that they convey the opinion of the police that the person identified by the victim is the perpetrator, and risk influencing future identifications made by the victim. *Id.* at 123, 523 A.2d at 96–97; *see State v. Manna*, 130 N.H. 306, 312, 539 A.2d 284, 287 (1988) (teaching of *Howe* is that police must not be permitted to unduly suggest who perpetrator is when identification is a key to State's case). However, unlike the situation in *Howe*, even if the statements there were unnecessarily suggestive, the comments by Ms. Berry did not indicate to the victim that the defendant in fact was the perpetrator. Moreover, Ms. Berry said and did nothing to influence the victim to identify the defendant in any future identification procedure. Thus, we hold that the defendant has failed to establish that Ms. Berry's conduct was unnecessarily suggestive under the State Constitution.

Having determined that the State Constitution does not afford the defendant the relief he seeks, we now turn to the Federal Constitution to decide whether it provides the. defendant any further protection.

■ The Supreme Court of the United States has determined that when a conviction is based on a pre-trial identification under conditions that are "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant is] denied due process of law," the identification is not admissible at trial. *Stovall v. Denno*, 388 U.S. 293, 301–02 (1967). Similarly, this court has stated when interpreting the Federal Constitution that an in-court identification following an out-of-court police identification procedure that is "unnecessarily suggestive" is not properly admissible. *State v. Allard*, 123 N.H. 209, 213, 459 A.2d 259, 262, *cert. denied*, 464 U.S. 933 (1983) (citing *State v. Ober*, 116 N.H. 381, 383, 359 A.2d 624, 626 (1976) (itself citing *Simmons v. United States*, 390 U.S. 377, 384 (1968))).

■ It is well established that under the Federal Constitution the defendant carries the initial burden of proving that the out-of-court conduct was unnecessarily suggestive. *State v. Humphrey*, 129 N.H. at 656, 531 A.2d at 331. Only after the putative conduct is shown to be unnecessarily suggestive does the burden shift to the State to prove

by clear and convincing evidence that the subsequent identification was reliable. *State v. Allard*, 123 N.H. at 213, 459 A.2d at 262; *see Perron v. Perrin*, 742 F.2d 669, 675 (1st Cir. 1984) (if out-of-court conduct found to be impermissibly suggestive, next inquiry is whether likelihood of irreparable misidentification exists). As we made plain in *Allard*, "[t]here is no need to consider the reliability issue unless the [out-of-court] procedures have been shown to be unnecessarily suggestive." 123 N.H. at 213, 459 A.2d at 262.

Although the cases cited by the defendant involved unduly suggestive out-of-court *identification* procedures, *see State v. Howe*, 129 N.H. at 123–24, 523 A.2d at 96; *State v. LeClair*, 118 N.H. at 216–17, 385 A.2d at 832, the burden will shift to the State to prove that the in-court identification was reliable if the defendant establishes that any out-of-court *conduct*, including identification procedures, was unnecessarily suggestive, *see State v. Carmody*, 112 N.H. 179, 181, 291 A.2d 610, 610–11 (1972). As we concluded above, Ms. Berry's conduct was not unnecessarily suggestive under the State Constitution. We now hold that, likewise, her out-of-court statements were not unnecessarily suggestive under the Federal Constitution. Accordingly, the trial court did not err in denying the defendant's motion to suppress the in-court identification.

*Affirmed.*

HORTON, J., did not sit.